ERMINIA CHIAPPINI *vs.* JOHN V. FITZGERALD.

Suffolk.    January 18, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence,* Employer's liability.    *Practice, Civil,* Exceptions.

If an experienced workman, engaged with others in removing and levelling a small hill or bank of hard pan, composed of stones of different sizes, clay and gravel, while working in the presence of his employer and under his personal supervision, is ordered to proceed to a section of the bank which has been undermined and is supported only by two "legs" or columns of the bank, one of which has been half cut away preparatory to causing the section to cave in by "wedging" it on the top after both "legs" have been cut away, and in accordance with his orders is shovelling loose dirt into a cart with his back turned toward the undermined section, when without being "wedged" the section falls, and buries him, instantly killing him, in an action brought by his widow under St. 1887, c. 270, § 2, against his employer for causing his death, the questions whether he was in the exercise of due care and whether the defendant took due precautions for his safety are for the jury.

An exception not argued is treated as waived.

TORT under St. 1887, c. 270, § 2, by the widow of Terenzo Chiappini for causing the instant death of her husband on December 21, 1899, by negligently putting him at work in an unsafe and dangerous place without warning or instruction in regard to the danger, alleged in different ways in three counts all under the statute.    Writ dated January 3, 1900.

In the Superior Court the case was tried before *Bell*, J.    The evidence is stated in substance in the opinion.

At the close of the evidence the defendant asked the judge to order a *pro forma* verdict for the defendant on the ground that there was no evidence of due care on the part of the plaintiff's intestate and no evidence of any negligence on the part of the defendant, and asked the judge to rule that on all the evidence the plaintiff could not recover.    The defendant also asked the judge to order the plaintiff to elect on which of the three counts she would go to the jury.    The judge refused to rule as requested, and submitted the case to the jury.

The jury returned a verdict for the plaintiff in the sum of $2,500; and the defendant alleged exceptions.

*P. B. Kiernan*, for the defendant.

*F. H. Chase & L. A. Rogers*, for the plaintiff.

HAMMOND, J.    At the time of the accident the deceased was engaged in the work of "grading, removing and levelling a small hill or open bank eight or nine feet in height and about fifty feet in width."    It was "hard pan," composed of stones of different sizes, clay and gravel, and was loosened by cutting away perpendicular trenches or channels running from the top to the bottom of the bank, about two feet in width and depth and six or eight feet apart, dividing the bank into sections, and then undermining the middle of each section to a depth of two feet and width of three or four feet, thus leaving on either side of the place so undermined and between it and the nearest channel on either side a "leg" of the bank which supported the mass overhead.    When the dirt caused by the undermining was removed, the legs were cut and the men, going on top of the bank with steel wedges, hammers and sledges, loosened the bank and caused it to cave.    Then the fallen earth would be carted away and the process repeated.

The evidence tended to show that while one leg of one of

these sections was partly cut, at least one half, and the other leg was still intact, the deceased, with several other fellow workmen was ordered to proceed to this section which had been undermined from two to three feet, to shovel the loose dirt into a cart standing there; and that while he was engaged in thus loading the cart, with his back turned toward the undermined section, the section fell, burying and fatally injuring him. At the time of the accident no one was "wedging" the bank.

One of the workmen called by the plaintiff testified that "generally we had to wedge it [the bank] off"; while the defendant testified that "we always had to wedge" it. The work at the time was under the personal supervision of the defendant, and he was present at the time of the accident.

We cannot say as matter of law that the deceased was not in the exercise of due care. Although there was evidence tending to show that he was an "experienced man" and had been engaged in this kind of work all his life, it was no part of his duty to study carefully the conditions affecting the stability of the earth. He was at work at that place in obedience to the direct order of the defendant, upon whom primarily rested the responsibility for due care as to the safety of the bank, and he might well assume that the defendant had duly watched the bank to see that it was safe. *Hennessy* v. *Boston*, 161 Mass. 502. *Bartolomeo* v. *McKnight*, 178 Mass. 242. Nor is this a case where there is no evidence of what the plaintiff was doing at the time the bank fell upon him. The evidence is full and definite enough to warrant a finding that he was working in compliance with the order given to him. See *Lynch* v. *Allyn*, 160 Mass. 248.

Upon the general question of the negligence of the defendant the case is close. There was evidence tending to show that the section had been considerably undermined in the middle, and that one half of one of the legs had been cut away; that where the bank is cut straight there is always more or less danger of caving, and that the rear of the cart which was being filled was within six feet of the bank and the deceased was near the cart. The defendant testified that he never would "back a team in after the bank was channelled until the bank came down," and also that when "banking down a fall" he would go on top and

watch while the men were cutting away the legs. It is true that in many material respects the testimony of the witnesses called by the plaintiff was contradicted by the evidence introduced by the defendant. The defendant's evidence tended to show that at the time of the accident the cart was being loaded at one end of the bank from a "fall" which had been "knocked down before dinner," and that there were no channels at that place. But it was for the jury to say where the truth lay.

In view of the nature of the bank, the manner in which the work was being prosecuted and the manifest peril to life and limb from a fall of the bank, we think that the question whether the defendant took due precautions for the safety of the plaintiff's intestate was rightly submitted to the jury. The case belongs to a class of which *Lynch* v. *Allyn*, 160 Mass. 248, is a type.

The question of election is not argued by the defendant and we treat it as waived.

*Exceptions overruled.*