KIELTY, Respondent, v. BUEHLER-COONEY CON-
STRUCTION COMPANY, Appellant.

St. Louis Court of Appeals, November 27, 1906.

1. MASTER AND SERVANT: Safe Place to Work: Assumption
of Risk. A laborer working in a sewer ditch did not assume
the risk of the earth falling upon him, where such cave in was
caused by the employer's negligence in failing to use ordinary
care to brace the ditch, that being the risk not usually incident
to the employment.

2. ————: ————: ————: Contributory Negligence. And where
the workman apprehending danger requested the foreman to
hand him bracing material which it was the foreman's duty
to furnish, and the foreman assured him it was all right and to
go ahead, and the evidence tended to show that the assurance
and direction of the foreman quieted the apprehension in the
workman's mind, whether he was guilty of contributory negli-
gence in continuing to work was a question for the jury.

3. ————: ————: Negligence of Foreman. And where the evi-
dence showed that the soil was wet, loose and crumbly, and the
foreman made no examination of the place, to which his atten-
tion was called by the workman, and failed to furnish the brac-
ing material when requested by the workman at the bottom of
the trench, though he had such material at hand which it was
his duty to furnish, whether the foreman was negligent was
a question of fact.

4. ————: ————: Contributory Negligence: Duty of Servant to
Make Place Safe. And in such case, where it was the duty
of the foreman to furnish bracing material, which he had at
hand, when necessary, and he failed to furnish it when re-
quested by the workman, although it was the duty of the work-
man to put in the bracings so as to render the place safe, un-
der such circumstances the workman was not guilty of contri-
butory negligence as a matter of law in failing to do so.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

AFFIRMED.

*Holmes, Blair & Koerner* for appellant.

The court erred in allowing the case to go to the jury. Wojtylak v. Coal Co., 188 Mo. 261; Knorpp v. Wagner, 93 S. W. 961.

*S. P. Bond* for respondent.

(1) Where the servant has apprehensions of the danger of the place where he is requested to work, but remains, upon the assurance of the foreman in charge of the work and in charge of the servant, that it is safe, and the servant is injured, the master is liable for such injuries. Brothers v. Carter, 52 Mo. 372; Lewis v. Railroad, 59 Mo. 495; Gormley v. Iron Works, 61 Mo. 492; McGowan v. Railroad, 61 Mo. 528; Keighan v. Kavanaugh, 62 Mo. 230; Cook v. Railroad, 63 Mo. 397; Dowling v. Allen & Co., 74 Mo. 12; Stephens v. Railroad, 86 Mo. 221; Miller v. Railroad, 109 Mo. 350; Russ v. Railroad, 112 Mo. 45; O'Mellia v. Railroad, 115 Mo. 205; Moore v. Railroad, 85 Mo. 588; Cole v. Transit Co., 183 Mo. 81; Carter v. Baldwin, 107 Mo. App. 217; Wojtylak v. Coal Co., 188 Mo. 261. (2) The damages awarded are not excessive, but are in fact small. Mills v. Construction Co., 44 Mo. App. 51; Voegel v. Marble & Granite Co., 56 Mo. App. 678; Custer v. McNair, 183 Mo. 270; Jones v. Railroad, 31 Mo. App. 614; Hall v. Water Co., 48 Mo. App. 356; Snider v. Railroad, 108 Mo. App. 234.

STATEMENT.—Respondent received personal injuries from a bank of earth falling on him while he was at the bottom of a sewer ditch. The appellant company was engaged in putting in a sewer on Florissant avenue in St. Louis in the spring of 1905, and had nearly one hundred men employed in the work. In digging the trench the earth would be taken out in sections four feet apart; that is to say, separate trenches sixteen feet long,

four feet wide and fourteen feet deep were dug and a solid wall of earth four feet wide was left between them. When two sectional trenches had been dug the requisite depth of fourteen feet, tunnels would be excavated from one to the other at the bottom level, through the four feet of intervening earth, so as to connect the trenches and permit the laying of sewer pipes. The tunnels were excavated from the opposite ends of this solid partition, which is called a bulkhead; that is, half the tunnel was cut from one end and half from the other. Plaintiff was working on one of these trenches with an assistant named Holloran. They had dug the trench the required depth, and were ready to dig out the bulkhead so as to connect the trench they were in with the next one. Kielty was using a pick to loosen the earth, and Holloran was taking the dirt away with a shovel and throwing it on a platform about half way up the side of the trench, whence it was thrown by another workman on the surface of the ground at the top. Paul Cooney, a brother of the president of the defendant company, was foreman and in charge of the work, with authority to hire and discharge men and generally to control their operations. It is customary to brace the ends of the trenches with planks or boards so as to prevent caving; and the bulkheads or sections of earth left between the trenches might be braced too, if bracing appeared to be necessary to prevent them from caving. Kielty and Holloran began the excavation of the bulkhead about two o'clock in the afternoon, and when they had dug into it about a foot and a half, Cooney was at the top of the trench where they were at work. Kielty swore he said to Cooney the bulkhead or earth did not look very good and he (Kielty) wanted some more braces to put in to hold it. Cooney replied: "What is the matter with you; go ahead; you go to work; that is all right." This testimony is corroborated by Holloran, but denied by Cooney. The latter admitted that if he was around he

would be the proper person for respondent to ask for bracing timbers, and that it was his (Cooney's) duty to see that the work was done right and the bracing made safe; that it would have been his duty, if asked by respondent for bracing material, to send it down to him; but said he did not have braces furnished for the bulkhead in question because he was not asked for them. He also admitted directing the bracing of the trenches on both sides as the work progressed; a statement which agrees with Kielty's statement that he (Kielty) put in bracing on the sides with the foreman standing over him, and did not brace the bulkhead at the same time because the planks were too short; saying it would have done no good to ask for longer planks while the foreman was there looking at the work; an expression which we take to mean that, as the foreman saw the planks were too short to brace the bulkhead and did not see fit, on his own motion, to call for longer planks, he would not have done so on a request from the workmen. Cooney further testified that he inspected the work, including the bulkhead that fell, from time to time, as it was part of his business to do; but that he did not pay any attention to the particular spot where the dirt caved, and saw nothing to indicate danger. Holloran swore he and respondent did all their work, including the bracing of the trench, under the foreman's orders, the latter directing where each brace should be placed. About half an hour after Kielty, according to his testimony, had requested bracing material to support the bulkhead, a mass of earth at the top of it became detached and fell on him, inflicting injuries. One witness for appellants, a workman in its employ by the name of O'Connor, swore he would not work where he thought there was danger of the earth caving in, even if he was ordered to do so, but he said the consequence of his refusal would be the loss of his job. Some testimony indicates the weather was rainy and the soil wet. For appellant the evidence was that the

men were expected to watch the condition of the trenches as the digging went on, tap the soil in order to ascertain if it was solid or likely to crumble, and put in bracing when, in their judgment, it was needed to make the trenches safe. Ample bracing material was kept at the top of the ditches and could be handed to the diggers when they wanted it. Respondent's injuries prevented him from working for seventeen weeks. He was thrown down by the bank of earth which fell on him, his face was forced against the point of his pick and a large gash cut in it, one of his eyes was slightly, but, it seems, permanently injured, his shoulder was hurt so the movement of it was unduly circumscribed and his hip severely bruised.

The acts of negligence charged against appellant are failure to furnish respondent a safe place to work and, instead, ordering him to work at a place in the sewer ditch where it was not properly and securely braced; ordering him to work at a place which appellant, or its foreman, knew, or by ordinary care could have known, was not reasonably safe. The defenses interposed in the answer were a general denial, and a plea in bar consisting of averments that it was appellant's duty to furnish respondent timber to brace the trench and respondent's duty to do the bracing as he saw fit; and also his duty to test the firmness of the walls of the trench and support them where they needed support; that if respondent was injured, the occurrence was due to his own neglect in not ascertaining the need of support, failing to support the bulkhead, working beneath it without either testing or bracing it, and excavating the trench in a careless manner while on his knees with his pick above his head. The reply was a general denial.

A demurrer to respondent's case was overruled and appellant excepted. The other error assigned is that the damages assessed were excessive. The verdict was for

$1,000; and judgment having been entered for that sum, defendant appealed.

GOODE, J. (after stating the facts).—The contention that a verdict for appellant should have been ordered is rested by counsel on these propositions, affirmed by them to be sound : First, respondent possessed more skill and had enjoyed a longer experience in putting in sewers than the foreman and, therefore, cannot be justified in relying on the larger experience of the latter and his assurance that the bulkhead was all right and required no bracing, or in obeying the order to go to work, which accompanied the assurance; second, respondent's own testimony shows he did not rely on the foreman's assurance; third, there were no signs to indicate the bulkhead was likely to cave and the foreman showed no lack of care, either in failing to detect the need of bracing it, or in refusing to furnish respondent bracing timber, on the latter's statement that the bulkhead did not look safe. We suppose counsel take for granted that the facts required to support these propositions are conclusively established by the evidence. Under recent decisions of the Supreme Court, the defense is untenable that respondent voluntarily assumed the risk of tunnelling through the unbraced bulkhead, if he continued to work while apprehending danger. In so far as appellant was negligent in omitting to furnish respondent a safe place to work, it must answer for the consequences to him if his own negligence did not contribute to the injuries received. [Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Wendler v. House Furnishing Co., 165 Mo. 527, 65 S. W. 737; Blundel v. Elevator Co., 189 Mo. 552, 88 S. W. 103.] If the earth of the bulkhead was so loose as to unduly endanger respondent while working in the trench, and appellant fell short of ordinary care in leaving it unbraced, respondent did not assume the risk of its falling on him, that being a risk not usually incident to the

employment, which, according to the foregoing decisions is the only kind a servant assumes. Therefore appellant's first proposition depends on whether or not, as a legal deduction from the facts, respondent was guilty of contributory negligence in continuing to work in the trench; assuming, for the present. that it was a dangerous place to work. This question leads to the inquiry of whether a man of ordinary prudence would have worked there after he had become alarmed as respondent had; but had received the assurance of the foreman that the place was safe, accompanied by an order to go to work. Obviously this is a question which cannot be answered as a matter of law; for the law raises no presumption about it. It is a question of fact or probability to be determined from common knowledge. The danger was not shown to be so apparent that a court can hold respondent should have ceased to work; nor does the evidence show who had the greater skill, he or the foreman. Both of them had had some experience in putting in sewers. The state of respondent's mind appears to have been about this: He was uneasy and asked for more planks to brace the bulkhead. The foreman who was at the top of the trench and right by the bulkhead, replied it was all right and commanded respondent to go ahead with his work. The inference is fair that this opinion influenced respondent's mind; reassuring him regarding his safety and inducing him to resume work without insisting on more bracing. The foreman was his vice-principal and there is no contention to the contrary. Under these circumstances we cannot pronounce respondent guilty of contributory negligence. We hold the issue was for the jury's determination. Opinions supporting this ruling and given on quite similar facts are: McGowan v. Railroad, 61 Mo. 528; Keeghan v. Kavanaugh, 62 Mo. 230; Cook v. Railroad, 63 Mo. 397, and Chicago, etc., Brick Co. v. Sobkowiack, 148 Ill. 573. We do not mean to hold that an employee can so far rely

on such an assurance and order as respondent swore he received from the foreman, as to forego the use of his own sense and judgment. Our decision is that in the present case the evidence does not prove the danger of the bank falling was so apparent to respondent, or that his mind was so convinced it would fall, as to enable us to say the assurance of safety had no material influence in inducing him to accept the situation. If respondent was thus influenced by what the foreman said, and the latter's advice and order were negligently given, appellant must answer in damages unless respondent failed of due care. [Graham v. Newburg, etc., Co., 38 W. Va. 273.] The record refutes the proposition that respondent's own testimony shows he did not rely on the foreman's assurance. He swore he did rely on it. Counsel say it is improbable that a skillful and experienced man like respondent, would have trusted to such an assurance. No doubt the jury weighed that argument; at least it was their duty to do so.

The third proposition is that no evidence was advanced to show the foreman was negligent in giving the assurance of safety to respondent and ordering him to proceed with his work—none to show a crack or flaw in the embankment; and hence the foreman was justified in saying there was no danger. This reasoning is fallacious. An experienced and cautious person might have perceived danger of the bank falling though no crack was visible. If the soil was wet, loose and crumbly, danger was to be apprehended; and perhaps other conditions of the soil would suffice to give warning. The foreman swore he had made no examination of the part of the bulkhead which fell; a statement in itself going to show carelessness, if his attention was called to the matter by respondent's expression of anxiety. Indeed, when material for bracing was at hand and was requested by a workman at the bottom of the trench, it is hard

to excuse the foreman for not having it handed into the trench. So simple and easy a precaution ought to have been taken if an employee expressed anxiety and a wish for securer bracing. We hold the question of the foreman's negligence was one of fact.

It is said contributory negligence on the part of respondent was established because it was his duty to brace the bulkhead. This matter, too, was one of fact. The foreman admitted it was incumbent on him, if asked, to furnish bracing material; and further said he had supervised the putting in of bracing on the sides of the trench. Holloran swore all the bracing respondent and he did was under the immediate direction of the foreman, who ordered each plank put in place. To hold respondent is conclusively shown to have been guilty of negligence in failing to support the bulkhead, when his request for material to support it with was refused by the foreman, would be a harsh ruling.

We are cited to two decisions of the Supreme Court as supporting appellant's demand for a nonsuit: Wojtylak v. Coal Co., 188 Mo. 260, and Knorp v. Wagner, 93 S. W. 961. In the first one, on facts somewhat similar to those before us, the Supreme Court did not nonsuit the plaintiff, but held his case was for the jury. The other was for injuries to the plaintiff, caused by an explosion of powder in a mine. The charge of powder had been put in a drill-hole a few days before, but had failed to explode; and plaintiff, when hurt, was engaged in drilling around the charge in order to extract it from the hole. He expressed a doubt about the safety of the operation to two vice-principals, or supervisors, and relied for recovery on alleged assurances from them that the operation was safe. The Supreme Court held that what one foreman said did not amount to an assurance of safety, and that the plaintiff failed to rely on the assurance of the other foreman, or even to obey his di-

rection; but exercised his own judgment and drilled parallel to the hole the powder was in, instead of at right angles to it as the foreman had ordered.   This case presents no such features.

The first instruction granted for respondent declared it was appellant's duty to furnish respondent a reasonably safe place to work; and that appellant was liable if the bulkhead was not properly braced, and, in consequence, was dangerous to work about, and Cooney the foreman knew, or, by the exercise of ordinary care could have known, those facts and have caused the bulkhead to be put in a reasonably safe condition; provided respondent was himself in the exercise of due care, and provided further that the bulkhead fell on him in consequence of not being properly braced.  The statement that it was appellant's duty to furnish a safe place, was too strong; but the remainder of the instruction shows clearly that the extent of the duty intended to be required of appellant was to use ordinary care to furnish a safe place. No point was made against the instrutcion because of the inaccuracy of the first clause.  The second instruction for respondent declared it was appellant's duty to exercise ordinary care to furnish respondent a reasonably safe place to work and then instructed regarding one of the acts of negligence averred in the petition, namely: that if the foreman knew, or by due care could have known, the trench was not reasonably safe, and by ordinary care could have made it reasonably safe by bracing the bulkhead, and under these circumstances, negligently caused respondent to work in the trench, or negligently failed to have the bulkhead braced, and on account of such failure, respondent, while in the exercise of due care on his part, was injured by the embankment falling on him, the verdict should be in his favor.  Those two instructions are objected to on the ground that under the evidence it was erroneous to declare in the positive language used, that appellant was charged with the duty of fur-

nishing respondent a safe place to work. It is not denied that, as a general proposition, this duty is incumbent on an employer to the extent that he must use ordinary care in respect of the safety of the place where he sets employees to work. But counsel contend that, in the present case, it was incumbent on the diggers to keep the trenches safe by bracing them; that the duty was on them to make the place where they worked safe; and hence the instructions under review were erroneous. The evidence shows without dispute, bracing material was kept at the top of the trench to be handed to the diggers when requested for use in supporting the walls of the trenches. On the question of who was to determine the necessity for bracing at a given point, the conclusion is fair from the foreman's testimony, that, if he was about, he would decide the matter. He admitted giving directions in regard to bracing, as well as other work. But the evidence shows without dispute, too, the diggers called for timbers when they thought it was neccessary to brace the walls. Hence it was respondent's duty to call for planks when he thought prudence required the bracing of any portion of a trench he was in, and appellant's duty to furnish planks in response to his call. It was also the foreman's duty, if he observed a place that needed bracing, to have this done even though the men in the trench had preferred no request; for, peradventure, the foreman might see a dangerous place which had escaped the attention of the workmen. It thus appears the responsibility of making the place where they worked safe, was not intrusted in undivided measure to the employees. The foreman had a duty and, indeed, a paramount one, in so far as he was advised, to see that the trenches were kept safe by supporting timbers. Now the first instruction goes no further than to tell the jury that if the foreman knew, or, by ordinary care, might have known the embankment under which respondent was working was dangerous in not being properly brac-

ed, and by the exercise of the like care might have caused it to be put in a reasonably safe condition, he was so far negligent that appellant is answerable for the injuries to respondent if caused without the latter's fault. We discern no reversible error in said instruction, nor that it relieved respondent from the consequences of his own negligence in failing to make the trench safe. The instruction submitted the question of the foreman's negligence to the jury and held appellant responsible for the consequences thereof, if found to exist. The instructions granted appellant clearly declared that if the falling of the bank was due to the negligence of respondent in failing to brace it, or test its solidity, and not to appellant's negligence, the verdict should be for the latter; submitting that defense in every phase appellant asked that it be. Indeed, the first instruction for appellant went further than the evidence warranted in permitting the jury to find, in effect, that the sole duty of bracing the trench was on respondent; a theory inconsistent with the testimony of the foreman regarding his duty. It follows from what we have already said that the second instruction granted for respondent was sound in allowing a recovery on a finding that the foreman carelessly caused respondent to work in the trench when the foreman knew, or might have known, the bulkhead was in a dangerous state. At most the question on this ground of recovery would be whether respondent was at fault in resting on the foreman's assurance, and the issue of contributory negligence was submitted to the jury.

The damages assessed were moderate, if the testimony for the respondent regarding the extent of his injuries is true. His case impresses us as meritorious and the judgment will be affirmed. All concur.