Argued March 12, decided April 28, 1908.

## MILLEN v. PACIFIC BRIDGE CO.

[95 Pac. 196.]

MASTER AND SERVANT—MASTER'S LIABILITY FOR INJURIES TO SERVANT—
ACTIONS—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

1. In an action for the death of plaintiff's intestate while excavating a tunnel for a sewer, the question as to whether deceased was guilty of contributory negligence in digging into the face of the embankment, *held* for the jury.

SAME—PLACES FOR WORK—CARE REQUIRED.

2. While a master is under an absolute duty to exercise reasonable care to provide his servants with a reasonably safe place in which to work, he is not an insurer of the servant' safety, and his duty is fulfilled when he exercises such reasonable care for their safety, and it is presumed that he has discharged his duty in that respect.

SAME—WAYS USED IN WORK—TUNNELS.

3. Where a servant is employed in a mine, quarry, tunnel, etc., the master must use reasonable care to make his place of work as reasonably safe as the nature of the work permits; but, if it is the workman's duty to shore up or make the place safe as the work progresses, the master's duty is fulfilled when he furnishes suitable material for that purpose.

SAME—RISKS ASSUMED BY SERVANT—KNOWLEDGE BY SERVANT—APPRECIATION OF RISK—"ASSUMPTION OF RISK."

4. The doctrine of "assumption of risk" is wholly dependent on the servant's knowledge, actual or constructive, of the danger incident to his employment, and where he knows, or should reasonably know, the risks to which he is exposed, he will as a rule be held to assume them, but where he does not know, or knowing, does not appreciate such risks, and his ignorance or nonappreciation is not due to want of care on his part, he does not assume the risk.

SAME—KNOWLEDGE OF FACTS—APPRECIATION OF RISK—NECESSITY.

5. There is a difference between knowledge by the servant of the surrounding circumstances and an appreciation of the risks resulting therefrom, and a servant may know the facts, but be wholly ignorant of the risk involved.

SAME—OBVIOUS RISKS—"OPEN VISIBLE RISK."

6. An "open visible risk" is such a one as would instantly appeal to the senses of an intelligent person familiar with the business, and about which there can be no difference of opinion in the minds of intelligent persons; and it is not required that the servant make close scrutiny into all the details of the instrumentalities with which he deals to determine the risk involved.

SAME—ACTIONS—QUESTION FOR JURY—ASSUMPTION OF RISK.

7. In an action for the death of plaintiff's intestate while excavating a tunnel for a sewer by the sides and top of the tunnel caving in and falling on him, whether deceased had such knowledge of the facts and appreciation of the danger involved in the work of excavating as would constitute an assumption of the risks thereof by him *held*, under the circumstances, for the jury.

SAME—PLEADING—NEGLIGENCE OF FELLOW SERVANT.

8. In an action by a servant against the master for injuries received, the defense that plaintiff's injury was the result of negligence of a fellow servant is an affirmative defense, and must be specially pleaded.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. COMMISSIONER SLATER.

This action was brought by John O. Millen, as administrator of the estate of John H. Larsen, deceased, against the Pacific Bridge Co., a corporation, to recover damages for its alleged negligence by which Larsen was so injured that he died on April 22, 1906, at Portland, Oregon.

The defendant was engaged in the construction of an extensive sewer for the City of Portland, and had completed two sections thereof, which approached each other at right angles at the intersection of East Seventh and Thompson streets. At this point the trench for the sewer was about 28 feet deep and 7 feet 3 inches in width. To construct that part of the sewer which had been completed at the time of the accident defendant, with machinery and appliances, had dug an open trench, but found this method impracticable to connect the two sections thereof at the street corner, thereby leaving an uncompleted section about 17 feet long through which a tunnel was to be dug to make the connection.

It is alleged in the complaint that on April 20, 1906, Larsen was in the employ of defendant, who instructed him to assist in the completion thereof, and that defendant carelessly failed and neglected to provide the tunnel with timbers or other appliances so that the same would not cave, and carelessly and negligently failed to make it a safe place for Larsen to work; that defendant well knew that the tunnel was a dangerous place in which to work, and that it was liable at any time to cave upon decedent; that Larsen did not know that the tunnel was a dangerous place in which to work, or that it was liable to cave and injure him; that while decedent was carefully performing his duties and digging the tunnel, as instructed and directed by defendant, and without any fault or negligence on his part contributing thereto, and by reason of the carelessness and negligence of defendant, the tunnel caved upon Larsen, so severely injuring him that he

died soon thereafter. The answer admits the employment, injury, and death of plaintiff's intestate, but denies the alleged negligence of defendant. Two affirmative defenses are also set up, consisting, first, of contributory negligence on part of decedent; and, second, of assumption of risk by him. The substance of these defenses is that the trench for the sewer at the point where the tunnel was to begin was to be about 27 feet deep, and had been excavated to a depth of about 19 feet, leaving about 8 feet of soil to be removed at that point to reach the bottom of the excavation for the tunnel, and that the earth forming the banks of the trench would stand perpendicularly and in its natural condition without lateral support, but was liable to cave, if undermined, all of which, it is alleged, plaintiff's intestate knew; that Larsen was employed with others to remove the earth in the bottom of the uncompleted trench preparatory to the construction of the tunnel, and was ordered not to dig into the face of the bank into which the tunnel was to be constructed, but in violation of his instruction, and contrary to his duty, under his employment, deceased proceeded to dig into and undermine the face of the bank, causing a quantity of earth to cave, fall upon, and injure him, which is the same injury complained of; that on April 20, 1906, decedent entered into the employment of defendant with full knowledge of all the surroundings as alleged, and of all the dangers and hazards incident to said employment at the place and time, and of the work he was required to do, and assumed all the risks and hazards thereof. The reply consisted of a general denial of the averments of the answer. The cause came on for trial before a jury, and at the conclusion of plaintiff's case, defendant moved for a nonsuit, which the court denied, and, after putting in its evidence, defendant requested the court to instruct the jury to return a verdict in its favor upon the ground of insufficiency of evidence to support a verdict in favor of plaintiff, which request the court denied. Upon the

rendition of a verdict for plaintiff and judgment thereon, defendant prosecuted this appeal, assigning as errors the denial by the court of its motion for a nonsuit and the refusal of the requested instruction.    AFFIRMED.

For appellant there was an oral argument by *Mr. Rufus Mallory,* with a brief over the names of *Dolph, Mallory, Simon & Gearin,* to this effect.

The rule which makes it the duty of a master to furnish his servants with a reasonably safe place to work must be considered in connection with another rule well settled, that "The master may conduct his business in his own way, although another method might be less hazardous": *Naylor* v. *Chicago & N. W. R. R. Co.* 53 Wis. 661-664; *Gilbert* v. *Guild,* 144 Mass. 601-604; *Sullivan* v. *India Mfg. Co.* 113 Mass. 396-398; *Wormell* v. *Railroad Co.* 79 Me. 397-405; *Hayden·* v. *Smithville,* 29 Conn. 548; *Buzzell* v. *Laconia Mfg. Co.* 48 Me. 121; *Shanny* v. *Androscoggin Mills,* 66 Me. 427; *Combs* v. *New Bedford Cordage Co.* 102 Mass. 585; *Ladd* v. *New Bedford R. R. Co.* 119 Mass. 413.

The latter rule supersedes the former in all cases where the employee knows the condition of the premises where he is required to work, and knows and understands the risks and hazards of the employment.   In such case the servant assumes the risks and hazards reasonably incident to the work he voluntarily undertakes to do: *Wormell* v. *Railroad Co.* 79 Me. 405; *Lovejoy* v. *Boston & Lowell Ry. Co.* 125 Mass. 82; *Gilbert* v. *Guild,* 144 Mass. 601-604; *Sullivan* v. *India Mfg. Co.* 113 Mass. 389-399; *Ladd* v. *New Bedford Ry. Co.* 119 Mass. 412; *Vincennes Water Supply Co.* v. *White,* 24 N. E. (Ind.) 747; *Engine Works* v. *Randall,* 100 Ind. 293; *Reitman* v. *Stoltie,* 120 Ind. 314 (22 N. E. 304) ; *Indianapolis & St. L. Ry. Co.* v. *Watson,* 14 N. E. 721; *Griffon* v. *Ohio & Miss. Ry. Co.* 24 N. E. 888 (Ind.) ; *Christianson* v. *Rio Grande & W. Ry. Co.* 74 Pac. 877; *Swanson* v. *Great Nor. Ry. Co.* 68

Minn. 184 (79 N. W. 978) ; *Simmons* v. *C., T. & R. Co.*
110 Ill. 340; *Pederson* v. *City of Rushford,* 41 Minn. 289
(42 N. W. 1063) ; *Rasmussen* v. *Chicago, R. I. & Pac. Ry.
Co.* 65 Iowa, 236 (21 N. W. 583) ; *Reiter* v. *Winona &
St. Paul R. Co.* 75 N. W. (Minn.) 219; *Regan* v. *Palo,*
41 Atl. (N. J.) 364; *Swanson* v. *City of LaFayette,* 134
Ind. 625 (33 N. E. 1033) ; *Hathaway* v. *Mich. Cent. Ry.
Co.* 51 Mich. 257; *Davis* v. *Detroit & Milw. Ry. Co.* 20
Mich. 105; *Quincy. Mining Co.* v. *Kitts,* 42 Mich. 34;
*Stephenson* v. *Duncan,* 73 Wis. 405 (41 N. W. 337) ;
*Songstad* v. *Burlington, C., R. & N. Ry. Co.* 41 N. W.
(Dakota) 755.

It is the duty of an employee on entering the service of
another, to exercise care to avoid injury to himself. He
is under as great obligation to provide for his own safety
from such dangers as are known to him, or are discerni-
ble by ordinary care on his part, as the master is to pro-
vide for him. He must take ordinary care to learn the
dangers which are likely to beset him in the service. He
must not go blindly to his work where there is danger:
*Illick* v. *Railroad Co.* 67 Mich. 637 (35 N. W. 708) ; *Platt*
v. *Railway Co.* 84 Iowa, 694; *Gibson* v. *Railway Co.* 63
N. Y. 449; *Rains* v. *Railway Co.* 71 Mo. 164; *Wormell* v.
*Railroad Co.* 79 Me. 405; *Mich. Cent. R. R. Co.* v. *Smith-
son,* 45 Mich. 212; *Hathaway* v. *Michigan Cent. Ry. Co.*
51 Mich. 256.

An employee is bound, in performing the duties of his
place, to take notice of the ordinary operation of familiar
laws, and to govern himself accordingly. If he fails to
do so, the risk is his own. He is bound to use his eyes
to see that which is open and apparent to any person
using his eyes ; and if the defect is obvious and suggestive
of danger, knowledge on the part of the servant will be
presumed, as well as when the danger is the subject of
common knowledge: *Wormell* v. *Railroad Co.* 79 Me. 405;
*Buzzell* v. *Laconia Mfg. Co.* 48 Me. 113; *Fisher* v. *Chicago
& G. T. Ry. Co.* 43 N. W. 926; *Christenson* v. *Rio Grande*

*& W. Ry. Co.* 74 Pac. 876; *Swanson* v. *Great Northern Ry. Co.* 70 N. W. 978; *Simmons* v. *C. T. & R. Co.* 110 Ill. 340; *Griffin* v. *O. & M. Ry. Co.* 124 Ind. 326 (24 N. E. 888) ; *Pederson* v. *City of Rushford,* 42 N. W. 1063; *Swanson* v. *City of LaFayette,* 33 N. E. 1033; *Reitman* v. *Stoltie,* 22 N. E. 304.

If the employee knows, or by the proper use of his senses should know or could know, as much about the character of the place and of the service, and of the dangers incident thereto as the employer knows, or by the exercise of proper care should or could know, the employee assumes the risks reasonably incident to the employment: *Scott* v. *Oregon Ry. & Nav. Co.* 14 Or. 211; *Weeklund* v. *Southern Oregon Co.* 20 Or. 591; *Christenson* v. *Rio Grande & W. Ry. Co.* 74 Pac. 876; *Fisher* v. *Chicago & Grand T. Ry. Co.* 43 N. W. 926; *Reitman* v. *Stoltie,* 22 N. E. (Ind.) 304; *Metzger* v. *Peninsular Car Co.* 42 N. W. 1078; *Swanson* v. *City of LaFayette,* 33 N. E. (Ind.) 1033; *Songstad* v. *Burlington, C. R. & N. Ry. Co.* 41 N. W. (Wis.) 755; *Johnson* v. *Ashland Water Co.* 45 N. W. 807; *Pratt* v. *Prouty,* 153 Mass. 333; *Vincennes Water Supply Co.* v. *White,* 24 N. E. 747; *Griffin* v. *Ohio & Miss. Ry. Co.* 24 N. E. 888; *Pittsburg, C. & St. L. Ry. Co.* v. *Adams,* 5 N. E. 187.

A person of apparently sufficient age, experience, physical ability, and mental caliber, seeking employment in a particular service, is presumed to comprehend and avoid all dangers that may be observed by ordinary care. He is held to an implied representation that he is competent to perform the duties of the service he seeks, and that he comprehends the risks incident to such service: Bailey, Masters' Liability, 113; *Pittsburg, C. & St. L. Ry. Co.* v. *Adams,* 5 N. E. 193.

The liability of a master for negligence causing injury to a servant, where the negligence complained of is not the personal act or omission of the master, but of a co-servant, turns upon the character of the act or omis-

sion.   If the co-servant, whose negligence caused the injury, was simply performing the work of a servant in his character as such, the master is not liable: *Loughlin* v. *The State of New York,* 105 N. Y. 159-163.

A man has no right to cast himself upon a known danger where the act subjects him to great peril: *Lake Shore & Mich. Southern Ry. Co.* v. *Pinchin,* 13 N. E. 677.

Where the facts are undisputed and lead to but one inference, the question whether there was or was not negligence, is a question of law: *Lake Shore & Mich. Southern Ry. Co.* v. *Pinchin,* 13 N. E. 677; *West Chester & Phila. Ry. Co.* v. *McElwee,* 67 Pa. St. 311; *Costello, Admrx.,* v. *Landwehr,* 28 Wis. 522; *Pittsburg, Ft. Wayne & Chicago Ry. Co.* v. *Evans,* 53 Pa. St. 250; *Pittsburg, Ft. W. & C. Ry. Co.* v. *McClurg,* 56 Pa. St. 294; *Pittsburg, Ft. W. & C. Ry. Co.* v. *McClurg,* 57 Pa. St. 172; *Biesiegal* v. *N. Y. Cent. Ry. Co.* 40 N. Y. 9; *Flemming* v. *Western Pac. Ry. Co.* 49 Cal. 253; *Dascomb* v. *Buffalo & State L. Ry. Co.* 27 Barb. 221.

The fact that an accident happens, in cases of this kind, raises no presumption of negligence on the part of the defendant: *Duntley* v. *Inman, P. & Co.* 42 Or. 339; *Kincaid* v. *Oregon Short Line Ry. Co.* 22 Or. 35; *Nutt* v. *Southern Pacific Co.* 25 Or. 291; *Walsh* v. *O. R. & N. Co.* 10 Or. 250; *Knahtla* v. *Oregon Short Line Ry. Co.* 21 Or. 136; *Priestly* v. *Fowler,* 3 Mies. & Wels. 1; *Wormell* v. *Railroad Co.* 79 Me. 403.

For respondent there was an oral argument by *Mr. Wilfred E. Farrell,* with a brief over the names of *Walter H. Evans, Spencer & Farrell,* and *William M. Davis,* to this effect.

While a master may conduct his business in his own way, although another method might be less hazardous, yet it is the absolute duty of the master to furnish his servant a reasonably safe place in which to work: *Duntley* v. *Inman,* 42 Or. 343.

While it is true that both master and servant are held to know, that which, by the exercise of reasonable diligence, they might have learned, still this rule does not, by any means, place the master and servant upon equality as to the acts necessary to constitute diligence; for, in view of the relative positions occupied by the master and servant, the standard of duty implied by the phrase "ordinary" or "reasonable care" bears a different meaning, according as the constructive knowledge of the master or of the servant may be in question: *City of Ft. Wayne* v. *Christie*, 156 Ind. 172; *Hennessy* v. *City of Boston*, 161 Mass. 502; *Salem Stone & Lime Co.* v. *Tepps*, 10 Ind. App. 516; *Doyle* v. *Missouri, K. & T. Trust Co.* 140 Mo. 1; *Roth* v. *N. P. L. Co.* 18 Or. 205; *Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 461; *Gutridge* v. *Missouri P. R. Co.* 105 Mo. 526; *Pittsburgh C., C. & St. L. R. Co.* v. *Woodward,* 9 Ind. App. 169; *Ohio & M. R. Co.* v. *Pearcy,* 128 Ind. 197; *Louisville, N. A. & C. R. Co.* v. *Quinn,* 14 Ind. App. 554.

When a servant, especially an inexperienced servant, is directed by his employer to do certain work, he may assume that the master has provided him a safe place, unless the danger of working in the place provided is so "apparent," "obvious," "glaring," "clear," "manifest," or "imminent" that a person of average prudence and intelligence would decline to work in the place. The master and the servant do not stand upon an equal footing; the position of the servant is one of subordination and obedience to the master, and he has a right to rely upon the superior knowledge and skill of the master. The servant is not entirely free to act upon his own suspicions of danger. Thus, an unskilled laborer, engaged in excavating a tunnel, under the direction of a superintendent, does not assume the risk of the roof falling in, unless the danger is so obvious that a prudent person, though acting in the capacity of a servant, should have disobeyed the order to work in such a place: *Quigley* v.

51 OR.— 18

*Bambrick,* 58 Mo. App. 192; *Christenson* v. *Pacific Bridge Co.* 27 Wash. 582; *City of Ft. Wayne* v. *Christie,* 156 Ind. 172; *Chiappini* v. *Fitzgerald,* 191 Mass. 598; *McCoy* v. *Town of Westboro,* 172 Mass. 504; *Vansteenburgh* v. *Thornton,* 58 N. J. L. 160; *Kielty* v. *Buehler-Cooney Con. Co.* 97 S. W. (Mo.) 998; *Hennessy* v. *City of Boston,* 161 Mass. 502; *Baird* v. *Reilly,* 92 Fed. 884; *City of La Salle* v. *Kostka,* 190 Ill. 130; *Bartholomeo* v. *McKnight,* 178 Mass. 242.

One who is employed because of his skill to superintend the construction of a sewer and who has full control thereof, is a vice-principal and not a fellow-servant, and his act in directing a servant where to work and giving assurance that the particular soil is safe, is the act of a vice-principal: *City of La Salle* v. *Kostka,* 190 Ill. 130; *Mast* v. *Kern,* 34 Or. 247.

Opinion by MR. COMMISSIONER SLATER.

1. The averment of the complaint is that plaintiff's intestate was, on April 20, 1906, in the employ of defendant. The particular services he was to perform for defendant are not stated, but it is alleged generally that he was instructed to assist in completing the sewer between East Seventh street and Thompson street. The answer admits that the relationship of master and servant existed between defendant and plaintiff's intestate on April 20, 1906, but denies the alleged instruction to assist in the completion of the sewer between those streets, and affirmatively alleges that on that day "plaintiff's intestate with other employees was engaged by defendant to remove said remaining bank of dirt to the depth of 27 feet, and said deceased and other employees engaged at the same work were directed in digging said remaining body of earth to carry the face of the embankment where said tunnel was to be located down perpendicular, and not to disturb the face of the standing bank." Hence there is an issue as to the scope of the employment, which must be

determined before other matters can be considered. The bill of exceptions recites that "it is stipulated and agreed between the parties hereto that the testimony offered by the plaintiff in support of the issues on his part tending to show * * that on the 19th day of April, 1906, the deceased, J. H. Larsen, was employed by the defendant to work, shoveling dirt in the ditch for the sewer at a point just east of Seventh street at Thompson street; * * that plaintiff introduced witnesses who testified that the deceased and his fellow workmen had orders from Mr. O'Neil, superintendent for the defendant, who had charge of the work and the direction of the men employed, to commence digging the tunnel into the face of the embankment on the east side of Seventh street, he (O'Neil) having first indicated on the face of the embankment where the tunnel was to be dug." This evidence is undoubtedly sufficient to support the issue on plaintiff's part as to the scope of the employment, and that the injury was received by Larsen while he was in the performance of the duties of his employment in a place directed by the defendant for him to work. And upon the issue of contributory negligence this evidence is sufficient to take the case to the jury.

2. Defendant's main contention, however, is that plaintiff's intestate assumed all the risks incident to the employment, and all extraordinary dangers and hazards of which he had knowledge and appreciated; while plaintiff rests his case wholly upon the rule of law which requires an employer to use reasonable care and diligence to provide his employees with a reasonably safe place in which to work. There is no controversy over the rule that it is the personal and absolute duty of the master to exercise reasonable care and caution to provide his servants with a reasonably safe place to work; but it is urged by defendant that the master is not an insurer of the safety of the servant, and therefore is not bound to furnish an appliance or machinery or a place that is absolutely safe,

and that his duty in this regard is discharged when he exercises reasonable care and caution to that end, and the presumption is that he has discharged his duty. This may be conceded to be the law: *Duntley* v. *Inman*, 42 Or. 334 (79 Pac. 529: 59 L. R. A. 785).

3. And where a servant is employed to work in a mine, quarry, tunnel, pit, trench or other excavation, the master owes the duty to use ordinary and reasonable care and diligence to make his place of work as reasonably safe as the nature of the work admits. Where, however, it is the duty of the workmen to shore up or otherwise make safe the place as the work progresses, the master's duty is fulfilled when he furnishes them with suitable materials for the purpose: 26 Cyc. 1119. The evidence discloses that Larsen, plaintiff's intestate, was employed by defendant on the 19th of April as a common laborer to shovel dirt and assist in that capacity to dig a trench for the construction of a sewer. At that time the trench on Thompson street lacked about 8 feet of being completed. On the 20th he assisted in digging out a portion of this eight feet of earth. At different places, and wherever needed, defendant had previously shored up and protected with timber the banks or walls of this trench to prevent it from falling or caving upon its employees while they were engaged at work therein. This had been done by one of its servants employed for that particular duty, and was not required to be done by those engaged to dig and shovel dirt. But no supports or timbers had been placed across the perpendicular wall or bank at the end of this open trench where the tunnel was to begin, excepting one brace which had been placed about 3 feet from the top of the bank, but slightly removed from it; the intention being to put lagging or planks behind it to hold the earth in place, but this was not done. On the next day, when Larsen returned to work, he and another employee were directed to begin digging into the face of this bank. They had been working about three hours when a quantity of

earth broke off the face of the bank just above and at the entrance of the tunnel, fell on Larsen, and so injured him that he soon thereafter died. The testimony is conflicting as to how far into the bank the tunnel had been excavated when the accident occurred, but it is stated by some witnesses for plaintiff that its extreme depth was six feet. All agree that it was six feet high and six feet wide, presumably the intended dimensions of the tunnel when completed. At the time of receiving the injury Larsen could not have been entirely within the tunnel, but was just at the entrance thereof, for the body of falling earth came from the northeast corner of the "face" or entrance thereof, and, according to the testimony of J. S. Reagan, defendant's witness, the bulk of it came from the bank above the entrance and extended from the surface of the ground down to the roof of the tunnel. The place where Larsen was put to work had been created by defendant before it employed him, and that it was a dangerous place the casualty establishes. There is evidence that the defendant knew, or was bound to know, of the imminence of that danger. It is contended by defendant, however, that the danger was so apparent, open, and manifest that a person of ordinary intelligence could observe and appreciate it, and that Larsen, when he first entered the trench, then about 25 or 26 feet deep, must have seen that the end thereof was not shored, and that to dig into the base of a perpendicular bank of that height and undermine it would cause the unsupported part above to fall upon and injure him; that this danger was so apparent and obvious to him that the law will not permit him to deny knowledge of the ordinary and universal law of nature—the law of gravity.

4. The doctrine of assumption of risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment. Where he knows, or in the exercise of reasonable and ordinary care should know, the risks to which he is ex-

posed, he will as a rule be held to have assumed them; but where he either does not know, or knowing, does not appreciate such risks, and his ignorance or nonappreciation is not due to negligence or want of due care on his part, there is no assumption of risk: 26 Cyc. 1196; *Roth* v. *N. P. L. Co.* 18 Or. 205 (22 Pac. 842); *Carlson* v. *Oregon Short Line Ry. Co.* 21 Or. 450 (28 Pac. 497); *Wagner* v. *Portland,* 40 Or. 389 (60 Pac. 985, 67 Pac. 300); *Geldard* v. *Marshall,* 43 Or. 438 (73 Pac. 330).

5. Plaintiff's intestate entered the employment of the defendant as an ordinary laborer to dig and shovel dirt in the bottom of a trench. He did not thereby impliedly represent to the defendant that he had any knowledge or skill in digging a tunnel or constructing a sewer. The evidence shows that he was a cement worker, and had little skill in handling a pick and shovel, or, as stated by one witness, "he handled a shovel like a greenhorn." When told by the master to begin digging into the bank for a tunnel, he must have seen that it was 25 feet high, and that no protection against its falling or caving had been made by his employer. But there is a difference between knowledge of the surrounding circumstances and appreciation of a risk: *Roth* v. *Northern Pacific Lbr. Co.* 18 Or. 205 (22 Pac. 842). In that case it is said that "one may know the facts, and yet not understand the risk; or, as Mr. Justice BYLES observed: 'A servant knowing the facts may be utterly ignorant of the risks': *Clark* v. *Holmes,* 7 Hurl. & N. 937. For, after all, Mr. Justice HALLET said: 'It is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him. What avails it to him that all the facts are known, if he cannot make the deduction that peril arises from the relation of the facts? The peril may be a fact in itself of which he should be informed.'" The evidence shows that at the place where the tunnel was to be dug the earth was composed of clay and loam which, when

not undermined, would ordinarily stand at a perpendicular height of 28 feet. But the defendant knew that it had been necessary in some places to shore up the sides of the sewer trench to prevent it from caving upon its employees, and it had expended a large sum of money in doing so. It also knew that a day or two before this accident occurred a dangerous crack had appeared on Seventh street close to the bank of the trench at the opposite end of this strip of ground 17 feet long, which was to be tunneled. And after Larsen went to work defendant's superintendent, O'Neil, came into the trench and marked upon the wall or end thereof where the tunnel was to be dug, and told one Barnes, a co-employee, to put the men to work at that place. Barnes testifies that after Larsen had gone to work he had a talk with O'Neil about the kind of ground they were to tunnel. The conversation given is as follows: "I said I thought the dirt was rotten and would not stand. He said he thought it would. I didn't know anything about the crack on the Seventh street end. The dirt on the Seventh street end and on Thompson street was apparently the same." From plaintiff's testimony it appears that in the evening of the day before, or two days before, the accident happened, O'Neil had observed a serious crack in the street at or near the opposite end of this section which was to be tunneled, and for that reason refused to allow the night shift to work that night, but sent them home. But there is no evidence that Larsen knew anything of this. One J. S. Reagan testifies in defendant's behalf that he worked for defendant upon the Seventh street end of the sewer. He says: "We ran up against a straight cut on the Seventh street side, perpendicular, and went down. We then completed the sewer and put in this tunnel about 2 feet on the Seventh street side. We put it underground there, the tunnel, two feet. No accident nor sign of dirt falling at this time." O'Neil, according to his own testimony, had had wide experience in mining, bridging, and sewer

building; that this sewer ran along various streets and that a tunnel had to be constructed where the sewer started from the Willamette River; this tunnel ran through sand and had to be supported with timbers; that at Seventh and Thompson streets the earth was sandy loam, which would stand when cut perpendicular, but was liable to cave if undermined; that the only caves that had occurred during the work were caused by the proximity of water mains or rain or water wetting the bank. He described the means employed to timber or shore the sides of the trench; that Larsen was employed at his own request, on the day before he was injured, and was placed at work with other men to remove dirt out of the ditch on the Thompson street side of Seventh street; that on the morning of April 20, Larsen, with two other employees, was placed at work near the face of the embankment where the tunnel was to be constructed, and a mark was placed across the face of the embankment showing where the top of the tunnel was to be; that Larsen and his fellow-workmen were instructed to clear the dirt away at the sides, near the embankment, for the purpose of placing timbers there, perpendicularly, to cut the tunnel; that he gave no orders for the men to begin digging into the embankment. He also testifies that he has no recollection of the crack spoken of by a witness for plaintiff, and gives as his reason, for not carrying on the work at night, it looked like rain and he sent the men home.

6. Can it be said, as a matter of law, that the circumstances related in this record show conclusively that the extraordinary risk and danger of this bank caving was so obvious to an ordinarily intelligent person that it would be perceived and appreciated at once? Mr. Chief Justice MOORE, in *Johnston* v. *O. S. L. & U. N. Ry. Co.* 23 Or. 95-105 (31 Pac. 283, 286), has defined such a risk as follows: "An open, visible risk is such a one as would in an instant appeal to the senses of an intelligent person: Wood, Mas. & Ser. 763. It is so patent that it would be instantly

recognized by a person familiar with the business. It is a risk about which there can be no difference of opinion in the minds of intelligent persons accustomed to the service. It is not expected that the servant will make close scrutiny into all the details of the instrumentalities with which he deals. His employment forbids that he should thus spend his time." The disastrous result shows that the work which Larsen was directed to perform and was performing was highly dangerous, and indicates that before attempting it, precautions should have been taken to prevent the earth caving. The record shows quite clearly that defendant's superintendent knew it was dangerous, but we are not able to say that the facts show conclusively that Larsen knew the facts or appreciated the danger. The question whether it would be safe to dig a tunnel into the particular bank in question depends upon something else besides the height of the bank, and it not being timbered or shored, but rather upon the cohesiveness of the soil and other collateral facts. It was not a danger so patent that it would be involuntarily recognized by one inexperienced and unfamiliar with the business, as is plainly shown by the testimony of Barnes, who says that O'Neil thought the tunnel could safely be dug without timbering, while he did not.

7. Now it is contended by defendant that, although Larsen may have been directed to commence digging the tunnel, he must have known that to dig into and undermine this bank would cause the unsupported earth to fall and injure him; that his danger was so apparent and obvious to him that the law will not permit him to say that he did not appreciate the danger, because that would permit him to deny knowledge of the ordinary and universal law of nature—the law of gravity. It has been held in some cases that, if one removes the foundation from a bank of earth composed of sand, gravel, and clay, it is liable to fall, and he will not be heard to say that he did not appreciate the danger. The cases cited in support

of this contention are such as involve injury received in a stope of a gravel pit, where the very object of the employment was to loosen the material of the bank so that the law of gravitation may operate and precipitate it to the bottom of the pit. This is usually accomplished by undermining for a considerable distance at and along the base of the bank, and after a time, either with assistance or by itself, according to the cohesiveness of the material, the bank falls. In such case the laborer expects it to fall. That is the object sought by the expenditure of his labor. In most, if not all, these cases the injured party had either previous experience in that kind of work, or had worked at the place of injury sufficiently long to acquaint himself with the risks and dangers incident to that class of work. Of such are *Christienson* v. *Rio Grande Western Ry. Co.* 27 Utah, 132 (74 Pac. 876: 101 Am. St. Rep. 945) ; *Olson* v. *McMullen,* 34 Minn. 94 (24 N. W. 318) ; *Swanson* v. *Great N. Ry. Co.* 68 Minn. 184 (70 N. W. 978) ; *Simmons* v. *Chicago & T. R. R. Co.* 110 Ill. 340; *Griffin* v. *Ohio & Miss. Ry. Co.* 124 Ind. 326 (24 N. E. 888). But the risks and danger of driving a tunnel through material of the same character would depend upon a different state of facts, and would not necessarily be the same. The respective sides of a tunnel as the result of an arched roof mutually afford some support to each other. Whether the roof of a tunnel, which is 6 feet wide and 6 feet high, will remain firm and be safe, or will fall when the tunnel is driven into a bank of clay and loam, which will stand at a perpendicular height of 28 feet, depends upon the cohesive power of the soil, the saturation of the soil by water, and the length of time it may have been exposed to the action of the air: *Fulger* v. *Bothe,* 43 Mo. App. 44. Under such circumstances it was a question for the jury and not a matter of law for the court to say whether or not Larsen had such knowledge of the facts and appreciation of the danger as would constitute an assumption of the risk by him: *Christian-*

*son* v. *Pacific Bridge Co.* 27 Wash. 582 (68 Pac. 191); *Coan* v. *City of Marlborough,* 164 Mass. 206 (41 N. E. 238); *City of Ft. Wayne* v. *Christie,* 156 Ind. 172 (59 N. E. 385); *Chiappini* v. *Fitzgerald,* 191 Mass. 598 (77 N. E. 1030); *Van Steenburgh* v. *Thornton,* 58 N. J. Law, 160 (33 Atl. 380); *Kielty* v. *Buehler-Cooney Const. Co.* 121 Mo. App. 58 (97 S. W. 998); *Illinois Steel Co.* v. *Schymanowski,* 162 Ill. 447-459 (44 N. E. 876, 879). In the last case cited it is said:

"Even if the servant has some knowledge of the attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury."

8. This last proposition is met by defendant with the argument that O'Neil who, it is testified on plaintiff's behalf, gave the order to Larsen to begin the digging of the tunnel, was a fellow-servant, and therefore defendant would not be liable for the result of obeying the order. But whether he was or not cannot now be considered, because there is no basis for it in the answer. The defense that the injury was the result of the negligence of a fellow-servant is an affirmative defense, and must be pleaded in order to be of avail: *Duff* v. *Willamette Steel Works,* 45 Or. 479 (78 Pac. 363, 668).

No error was committed by the court in denying the motion for a nonsuit, or in refusing the requested instruction.    AFFIRMED.