[Filed December 3, 1889.]

A. ROTH, Respondent, *v.* THE NORTHERN PACIFIC LUMBERING COMPANY, Appellant.

It is a rule of law founded upon the theory of implied contract between the master and servant, that when the latter enters the service of the former, he takes upon himself all the ordinary risks of his employment.

A part of this implied contract is that the master shall provide a reasonably safe place for the servant in which to perform his work ; yet the servant may dispense with this obligation. When the servant consents to work at a place which will expose him to danger, knowing and understanding what such danger is, and the risks he incurs thereby, he cannot complain, in the event of an injury on that account, that the place where he worked might have been made safe by the exercise of reasonable care. Having consented to serve in the way and the manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected.

When it is not unlawful and does not interfere with the rights of others, it is the legal right of every person to carry on a business which is dangerous in itself, or in the manner of conducting it, nor is he bound to box or fence machinery in running his mill unless required to do so by statute.

A servant that is acquainted with that danger and fully understands the risks to which he is exposed when the place prepared for him to work is near or about machinery which is not boxed or covered, and chooses to contract to do it, then he assumes such risks and the master is under no obligation to indemnify him against the consequences of such risks.

On the other hand a servant that is ignorant and inexperienced and does not know and understand the risks to which he is exposed in working at such place, and an injury happens to him without any negligence on his part and without the master warning or pointing out the danger, he would be guilty of a breach of duty and liable to the servant for the injury he sustained.

Where the service required to be performed is rendered dangerous by reason of the master's failure to provide a place where the servant may do his work with safety, but which, by the exercise of due care and reasonable expense on the part of the master might have been made safe, such failure will be regarded as a breach of duty and render the master liable, unless the servant has knowledge and comprehends the nature of the risks to which he is exposed at the place provided, or unless the master, if the servant is ignorant and inexperienced, point out or give him full notice of the risks attending such service at the place to be performed, and thereby enables him to appreciate such risks and to avoid them.

The distinction rests on knowledge, but there is a difference between knowledge of the facts and knowledge of the risks which they involve. One may know the facts and yet not understand, or be totally ignorant of the risks.

The rule is well established that it is not error for the court to refuse to give instructions asked upon propositions which have been elsewhere covered in its general charge. Nor will the court reverse a judgment for the refusal of instructions if it can see that the case was placed fully, fairly and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law and in their application to the evidence.

APPEAL from the circuit court for Multonomah county.

*Thos. N. Strong,* for Appellant.

*Silverstone & Murphy* and *Gearin & Gilbert,* for Respondent.

LORD, J.—This is an action to recover damages for personal injuries sustained by the plaintiff, while acting in the capacity of a laborer, by being caught in a rapidly revolving shaft and seriously injured. The negligence alleged, in substance, is that the defendant did not provide a safe place for the plaintiff to do his work; that it suffered to be used in its mill an uncovered shaft with projecting screws, over which, in the performance of duties connected with his service, the plaintiff had to step while such shaft was rapidly revolving, in the doing of which he was ignorant of the danger, but that the defendant had notice of the same; and thereby exposed him to unusual dangers and risks. The defendant denies the negligence imputed to it by the complaint, and alleges that it provided and furnished the plaintiff a safe place, and suitable instruments at which and with which to work, and that the plaintiff, contrary to instructions, and negligently, wore a loose gunny-sack for an apron, and carelessly climbed over said revolving shaft at a place where it was neither necessary or proper for him so to do,—that said shaft was several feet away from the place where the services were to be performed, but in plain sight, and its dangers obvious, and that the duties of the plaintiff did not require him to pass over it, but up the slab chute to clean it out, when obstructed; that while so climbing over said shaft, the said apron became entangled with the shaft, and the plaintiff thereby injured by his own misconduct and neg

ligence. The reply put in issue the affirmative facts alleged in the answer, after which a trial was had, which resulted in a verdict and judgment for the plaintiff.

There are numerous assignments of error, but those chiefly relied upon in the brief and at the argument are confined to exceptions taken to certain portions of the charge as specified, and certain other instructions asked by the defendant and refused by the court. The bill of exceptions contains the evidence and the charge of the court to the jury, so that the record before us contains every matter essential to a right decision of the errors assigned. While the testimony is conflicting, a brief outline of it becomes necessary to understand the instructions given and those asked, in order to determine the relevancy and soundness of the objections raised. The testimony of and for the plaintiff tended to show, in substance, that he applied to the foreman of the defendant's lumber mill for a job, and was directed to go below and go to work at the chute down which the slabs were passed from the floor above. His co-laborer, who spoke the English tongue but little, by motions and broken English, explained to him, as well as he could, how to do the work at which they were engaged. These duties were to keep the lower end of the slab chute clear, and to distribute them accordingly, as they were adapted, some to the lath saws and the others to the wagons. At the foot of the chute was a platform, which was the working place of the plaintiff and his co-workers. Occasionally it would happen that the chute would blockade with the slabs, when it would become necessary to get further up the chute and break the blockade. To do this, according to the testimony for the plaintiff, the defendant had provided but one way, and that way required him to leave the place at the foot of the chute some several feet, and step over an uncovered three-inch iron shaft, with set-screws projecting, which was revolving at the rate of four or five hundred revolutions a minute —the shaft being about seventeen inches above the plank upon which he was standing. over which he had to step to

reach the point up the chute where the blocked slabs could be loosened and made to pass down the chute. Other witnesses who had worked at the chute testified to the same effect and corroborated the statement that there was no other way provided to reach the wedged slabs up the chute except over the uncovered shaft as already described, and that the foreman himself had gone that way on one occasion when aiding in breaking a blockade. The defendant sought to contradict this by introducing evidence to show that there was a safe passage another way which could have been used for that purpose, but if there were such, it does not seem to have been known to those who worked at the foot of the chute, and upon whom devolved the duty of breaking these jams. It had averred in its answer that the proper way to effect this object was to go up this chute, but that seems to have been abandoned at the trial, and in place thereof, testimony was introduced to show there was another safer passage-way than the one used by the plaintiff as already stated.

The testimony for the plaintiff shows that he is a common laborer and not a skilled mechanic; that his knowledge of machinery and its uses and the perils attending it is limited; that he had been at work at the business some three months prior to the injury; that the iron shaft referred to was several feet from the platform at which he worked, and not always visible from that point, but that in going to it, and to step over it, the shaft was plainly in sight, and that he did not know there were any set-screws, with their projections, upon it,—which, it may be added, were necessarily invisible when the shaft was revolving at such a rapid rate; that the morning he went to work at the foot of the chute he put on the apron, that was hanging upon one of the posts, which had been used by a former worker; that he usually wore a gunny-sack for an apron, some three or four inches above his knees; that in doing his work they picked up the slabs, and that as the logs from which they came were taken out of the river they were wet, and covered with slime, rendering it necessary to wear an apron;

that his co-workers wore one, and that the testimony of others who had worked there showed that they had done the same thing; that the plaintiff was wearing an apron at the time when he received the injury, and that it and his pants were torn off when it occurred. To overcome this, the defendant introduced testimony tending to show that the wearing of gunny-sacks for aprons was dangerous where there was machinery, and that the plaintiff had been repeatedly admonished of this danger, but that he gave no heed to it; that he wore his apron long and flowing, and not split up and tied around the legs, as was necéssary for safety, and that he was so carelessly wearing it when the accident occurred; that the shaft was in plain sight, and the danger of crossing it was apparent, and could be avoided by the exercise of care and attention.

It appears, then, upon the issue made and tried, that the contention of the parties may be thus resolved: The plaintiff contends that he was inexperienced, and that the defendant violated its duty in putting him to work at a place which was not safe, and exposed him to more than ordinary dangers and risks, while the defendant insists that he deliberately abandoned the safe way which he provided for the unsafe one he used; but, barring that, he maintains that the revolving shaft was in plain sight, and the danger of crossing it fully exposed and discoverable by the commonest observation and intelligence, and that the accident was the immediate and exclusive result of his own act, in carelessly and inattentively crossing it. It is a rule of law, founded upon the theory of implied contracts between the master and servant, that when the latter enters the service of the former he takes upon himself all the ordinary risks incident to his employment. These risks, it is said, he is supposed to have in mind when he engages in the service, and that his compensation is stipulated accordingly. To justify that assumption, we are bound to presume that he knows and understands. the ordinary risks incident to his employment, and that if. an injury occurs as a result of the ordinary and not extra-

XVIII. Or.—14.

ordinary risks of such employment, although he may have exercised ordinary care, the master is not liable.

But another part of this implied contract is that the master shall furnish suitable tools and appliances for the servant with which to work, and provide a reasonably safe place in which to perform it; yet the servant may dispense with this obligation. When he consents to work at a place which will expose him to danger, knowing and understanding what such danger is, and the risk he incurs thereby, he cannot complain, in the event of an injury on that account, that the place where he worked might have been made safe by the exercise of reasonable care. "His assent," said Devens, J., "has dispensed with the performance on the part of the master to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." *Sullivan* v. *Ind. Manufacturing Co.*, 113 Mass. 390.

When it is not unlawful, and does not interfere with the rights of others, it is the legal right of every person to carry on a business which is dangerous in itself, or in the manner of conducting it. He may select the machinery to be used, and conduct the business in the manner he deems best, and, as Ellsworth, J., said, "run his mill with old or new machinery, just as he may ride in an old or new carriage, navigate an old or new vessel, occupy an old or new house, as he pleases." *Hayden* v. *Manufacturing Co.*, 29 Conn. 558. Within the same principle, so long as the law does not require it, the master is not bound to box or fence his machinery in running his mill and conducting his business, and merely a failure to do so will not render him liable for neglect.

In such case, if the servant is acquainted with the dangers, and fully understands the risks to which he is exposed when the place prepared for him to work is near or about machinery which is not boxed or covered, and consents or chooses to contract to do it, then he assumes such risks, and the master is under no obligation to indem-

nify him against the consequences of them.   Having consented or contracted to work in a place or position in which he was exposed to the machinery, he will be held to have understood the hazard attending his employment, and to have voluntarily taken upon himself the consequences of such hazard.   In all such cases, the contract, although involving dangerous service, has been voluntarily entered into, with full knowledge or sufficient intelligence to comprehend the hazards or risks to be incurred in the employment; and the servant can have no just ground of complaint against the master for damages resulting from that service.

But, on the other hand, if the servant is ignorant or inexperienced, and does not know or understand the risks incident to his employment, and to which he would be exposed, and an injury happen to him without any negligence on his part, and without the master warning or pointing out the dangers, he would be guilty of a breach of duty, and liable to the servant for the injury he sustained.   The distinction rests upon the knowledge of the servant in one case, and the want of it in the other.

If, therefore, the service required to be performed is dangerous, or rendered so by reason of the master's failure to provide a place where the servant may do his work with safety, but which, by the exercise of due care and reasonable expense on the part of the master, might have been made safe, his omission would be a breach of duty, and render him liable for any injury arising therefrom, unless the servant has knowledge of, and comprehends the nature or extent of, the risks to which he is exposed, at the place provided, and thereby dispenses with the performance of this duty on the part of the master; or unless the master, when the servant is ignorant or inexperienced, points out, or gives him full notice of, the risks attending such service at the place to be performed, and thereby enables him to appreciate such risks, and to avoid them.

It is the duty of the master to furnish suitable machinery and a suitable place for the prosecution of the work required of his servants.   In the case at bar, the claim of

plaintiff is to the effect that he had no knowledge or infor-
mation of the nature of the hazards to which he was
exposed, while it seems to be conceded that the defendant
knew and understood the risk the plaintiff, or any one else,
would incur in crossing the uncovered shaft in controversy
In a word, knowledge upon the part of the master, for the
purposes of this case, may be regarded as admitted; but
the want of it in the plaintiff, sufficient to protect himself
from the risks of the service at the place where the injury
occurred, is a controverted fact. Upon the testimony, the
contention of the plaintiff is that his want of knowledge,
arising from his inexperience of the hazards attending the
service in the line of duty which devolved upon him, and
the failure of the defendant, who knew such hazards, to
warn him, or give him such instructions as would enable
him to understand and to avoid the danger, renders the·
defendant liable; while the defendant contends, on this
point, that such instructions were unnecessary, because the
danger, and the means of avoiding it, were apparent and
discoverable by the commonest observation. It appears
from the evidence of the plaintiff that the place at which
he did the principal part of his work was on a platform at
the foot of the chute, which is admitted to be a safe place
to perform the labor required there. But it occurred,
occasionally, that the chute would become blockaded by
the slabs, and, to reach a point higher up the chute, so as
to break the jam or blockade, it was necessary for the
plaintiff to leave the place at the foot of the chute, and step
across the uncovered, revolving shaft. His pathway was
thus across a rapidly revolving, uncovered shaft, with
projecting set-screws, from the one place to the other, or
the two places at which he was required to work at times·
were connected by but one route, and that was directly
across this uncovered shaft. It will be seen from this that
the danger was not inherent in the work itself, but was a
hazard which the plaintiff must incur in passing from one
place to the other as occasion required, and in that way
became connected with the places at which he worked, and

he became exposed to it. A route, so to speak, across an
uncovered shaft, of its height and character and rate of
revolution, which had to be stepped over in the discharge
of his duties, involved, without doubt, a dangerous service.
And, while the testimony of the defendant tends to show
that there was another safe way, and that there was no
need to cross the shaft, it further tends to show that there
was no occasion for the exercise of its knowledge as to the
nature of the risk incident to his line of duty, as the shaft
was in plain sight, and the danger in crossing it apparent
to the commonest intelligence; and, as a consequence, the
plaintiff must have understood, or, by the exercise of com-
mon observation, ought to have understood, the risks
involved in his service. But it is to be borne in mind that
there is a difference between a knowledge of the facts and
a knowledge of the risks which they involve. One may
know the facts, and yet not understand the risk; or, as Mr.
Justice Byles observed. "a servant knowing the facts may
be utterly ignorant of the risks." *Clark* v. *Holmes,* 7 Hurl.
& N. 937. For, after all, Mr. Justice Hallet said, "it is
not so much a question whether the party injured has
knowledge of all the facts in his situation, but whether he
is aware of the danger that threatens him. What avails it
to him that all the facts are known, if he cannot make the
deduction that peril arises from the relation of the facts?
The peril may be a fact in itself of which he should be
informed." *McGowan* v. *Mining Co.*, 3 McCrary, 393, 9 Fed.
Rep. 861. So that in a case like the present, where the
evidence is conflicting as to whether or not the defendant
had knowledge of the risks to which he was exposed, the
question is preëminently for the jury.

Now. turning to the instructions, we are to ascertain
wherein the court erred in respect to such portions of the
instructions as were excepted to and assigned as error.
The trial court, after defining to the jury "negligence,"
and the negligence complained of in respect to the place
provided for the plaintiff to work, said: "The master is
bound to provide his servants a safe place in which to

perform their labor, and suitable and proper tools with which to perform it." The objection to this instruction is that it is too unqualified, as applied to the facts; that a safe place in a saw-mill, with its saws and belts and shafts, practically speaking, is impossible. Now, the point in issue here was not as to the degree of safety of the particular places at which the plaintiff performed his work, for the injury was not received at them, and they were admitted to be safe, or at least not complained of, but whether the way provided by the defendant which connected them, and involved the risk, was reasonably safe. As to this, the court said: "If that was the nature of his employment, and that was the manner in which he was left to discharge his duty, then it became the duty of the defendant to provide for him a reasonably safe course from the foot of the chute to the point above where it was necessary for him to work," etc. Upon this point, it was important that the trial court should instruct the jury correctly as to the law applicable to the facts; and that it has done so, with accuracy and precision, is not open to controversy. It may be conceded, standing alone, and without reference to other parts of the instruction, or considered as the only instruction given upon the issue involved, the instruction excepted to was open to the objection urged; but when taken in its connection, and with what follows, when the real matter in controversy is considered, there can be no liability in it to mislead the jury.

The next portion of the charge excepted to is as follows: "If the employment is one involving any peculiar labor, or there is connected with the place where it is to be performed any particular causes of danger, of which the servant is ignorant, by reason of his want of skill in that employment, it is the duty of the master to instruct him upon those subjects, and inform him what it is he needs to be watchful of in the discharge of his duties; and if the master neglects these things he is held chargeable for the injuries that result from that neglect." In the light of the facts and the law as already stated, it is difficult to

suggest what objection could be urged to this instruction.
If there were any peculiar causes of danger connected
with the place where the work was to be performed, of
which the plaintiff had no knowledge, as he has averred
and testified, it is plain law, and alike the dictates of
humanity and good faith, for the master to give him full
notice of the dangers incident to his line of duty. That
there were facts in evidence to which the instruction
excepted to was applicable, and that it was a correct expo-
sition of the law in respect to them, we think, must be
conceded. But this was the plaintiff's side of the case;
and that the jury might have the law as to the other side,
upon the evidence presented by the defendant, the instruc-
tion excepted to is immediately followed by this language:
"At the same time, if the dangers attending the place—
connected with the place, I will say—and attending the
performance of the labor, are open and manifest, and the
servant, if he will think and look, will understand them
fully, and he nevertheless proceeds to engage in the
employment, the master is not responsible for injuries that
may result if the servant has been negligent in protecting
himself against dangers of which he is fully apprised;"
and so on, and of like import.

The next exception is to these words, "of the plaintiff,
for instance, with such experience as he appears to have
had about machinery," which was the concluding clause of
a sentence, the whole of which requires to be stated to
render the portion objected to intelligible. "You are to
consider," said the trial court, "the evidence relating to
this revolving shaft, with the collar and set-screws, and,
in connection with that, you are to consider what the testi-
mony is in reference to such being the ordinary machinery,
and whether it was entirely manifest to any looker-on,
even if he might be ignorant of machinery, whether the
effects it might produce were within the ordinary appre-
hension of one looking at it,—if the plaintiff, for instance,
with such experience as he appears to have had about
machinery." All that precedes the excepted portion is

admitted to be good law, and, it may be added, was entirely
fair to the defendant.   It is difficult to understand what
the point of objection is, unless it be that it is never the
duty of the master to give notice of danger, and that the
servant always assumes it, however great his ignorance or
inexperience, or want of capacity to appreciate such dan-
ger.   The court was instructing the jury of their duty to
consider whether the danger from the machinery was
entirely manifest to any looker-on, even if he might be
ignorant of machinery, and to determine the effects that it
might produce; that is, whether the risks incurred by it
were within the ordinary apprehension of one looking at
it.   We have already adverted to the distinction that there
may be knowledge of the existence of facts, and yet total
ignorance of the risks which they involve.   By looking
and seeing, the fact that the shaft was there, and rapidly
revolving, was apparent; but that is not enough.   The
inquiry must go further :   Would a looker-on be aware of
the danger?   Could he make the proper deduction that
peril arises from the relation of the facts?   It is this which
he must understand to appreciate the risk.   Now, the jury
had heard the evidence of the plaintiff's want of knowledge
of machinery; but, as he did not operate the machinery,
and his duties only required him occasionally to cross the
shaft, which was in plain sight, his knowledge of it, neces-
sarily, was only such as he derived from seeing or looking
at it, and, as applied to him, the effect of the instruction
was to say to the jury that they were to consider whether,
as a man of ordinary apprehension, even though he was
ignorant of machinery, when the shaft was in plain sight,
as one who had seen it, he understood the effect that it
might produce, or the peril arising from it in relation to his
services.   There was no error.

The next exception involves several instructions, which
may be considered together.   These are:  ''You are to
consider the testimony with reference to the feasibility of
fencing it in, either by boxing that would entirely cover
it, or by bars or guards across the timber where it was

located, and, from all the testimony, consider whether the defendant omitted to do anything that was reasonable and proper that it should do, that would have tended to the security of this plaintiff. If you believe from the testimony that the defendant employed this plaintiff to work at that slab-chute, and made it the duty of the plaintiff, with his associate, to keep the slab-chute clear, and there was no specific direction how he should conduct his labors in that regard, then it was left to the judgment and discretion of the plaintiff how he would keep that chute clear,— whether he would do it altogether by working at the foot of it, clearing the foot, or whether he would, in case of a block in the chute, go up or go to some point above the bottom, and remove the block from that point. And if that was the nature of his employment, and that was the manner in which he was left to discharge his duty, then it became the duty of the defendant to provide for him a reasonably safe course from the foot of the chute to the point above, where it was nescessary for him to go to work, or where it was convenient and proper for him to work, removing a block from the chute; and that makes it necessary for you to go over this testimony, in the manner in which I stated a moment ago, and inquire whether there was a safe way provided for those who were working at the bottom of this chute to go to a point higher up, where it was convenient and necessary for them to work, to remove the block that occurred in the chute at times."

It may be considered as admitted that the plaintiff did not receive any instructions as to his work, or the danger incident to it, at the place to be performed, but it was claimed that there was a safe way provided, and that there was no occasion to go the way over the shaft, or, if there was, the danger was apparent to common observation; while, on the other side, the position was that the way over the shaft was the only way provided, and that, in consequence of its being uncovered, it was unsafe, unless boxed, to an experienced or ignorant man, unless he was advised of the danger and

instructed as to his duty in regard thereto. Now, the court was instructing the jury, and impressing upon them the duty to go over the testimony, as it had before indicated, fully, and to which no objection could be made, and ascertain whether the defendant had provided a safe way, and necessarily, if the defendant has, and the jury should so find, the case would end there; but, in order to cover all phases of the case, in the event the jury should find that the defendent had not provided the safe way, as alleged, then it would become their duty to consider the plaintiff's testimo..y in this regard, which, if the jury believed, and that he was without specific directions as to his work, then it became the duty of the defendant to provide a reasonably safe way over the shaft, and this necessarily involved an inquiry in regard to the duty of the defendant in reference to boxing the uncovered shaft; that is, whether, by leaving it uncovered, in that phase of the case, there was any omission to do anything which the defendant reasonably ought to have done for the security of the plaintiff.

We are now to consider the refusal of the instructions asked, and these are eight in number, but the two last, the seventh and eighth, we shall dispose of by saying that the seventh required the court, in its instruction, to omit material testimony tending to establish the plaintiff's version of his case, and contradicting the defendant's claim that the risk was visible to the commonest intelligence, and the eighth was liable to mislead as asked, and, upon the facts, the law was better stated by the court in the general charge. It is a tedious task, but I shall discharge it, although it extends this opinion, by copying several of the instructions asked,—selecting those regarded as the most important,—and showing that in substance, and especially as applicable to the facts, they are covered by others given in the charge. The third, fourth and fifth, as asked, were as follows: "If you believe from the evidence that the plaintiff knew the position and character of the revolving shaft by which he was injured, and could have avoided it by going around the end of the shaft instead of stepping over

it, and did not do so because he thought he could do so [safely], and it was the easier way, he was guilty of negligence and cannot recover.    In case the risk of crossing the shaft was much increased by the plaintiff's wearing a long coal-sack apron, and the plaintiff voluntarily wore such apron, and the wearing of this apron was the primary cause of the accident, then defendant is not responsible. If the jury find that this injury was caused by the set-screw catching in a sack apron voluntarily worn by plaintiff, and which apron manifestly increased the danger to a man employed about a dangerous revolving shaft, and without the apron the accident would not have occurred, the plaintiff was guilty of negligence and cannot recover."    The instruction given by the court was as follows:    "The evidence tends to show that the plaintiff had on at the time he was injured an apron of some kind, and that the apron was caught by this revolving shaft.    Now, it is a question for you to determine whether the wearing of the apron, under those circumstances, considering the place where the plaintiff worked and was obliged to work, if he was obliged to work anywhere—consider, I say, whether it was negligence, or otherwise, for the plaintiff to wear an apron at that place and time, and whether that negligence of his directly contributed to the injury that he sustained; whether it is probable that if he had not had an apron on he would have escaped the injury that he sustained, even if the defendant might have been negligent in respect to the shaft.    And, if it seems to you, and you find from the evidence, that the wearing of this apron—of the apron described by the witnesses—was the proximate and direct cause of the injury which the plaintiff sustained, then he should be held guilty of negligence.    Apply to the plaintiff the same rule that I referred to in respect to the defendant.    Did the plaintiff do any act or thing in connection with his employment there, on the occasion of his injury, that a prudent and cautious man would not have done?"    And, "it is necessary for you to go over this testimony, and inquire whether there was a

safe way provided," etc. And, of course, if the jury found that there was, there could be no excuse for going over the shaft, and the plaintiff would be guilty of negligence. And again, and finally, the following was asked: "It was the duty of plaintiff, when approaching machinery about which he was employed, both to think and look, in order to avoid injury from such machinery; and, if you find from the evidence that the injury sustained by the plaintiff was received by reason of his failure to think or look as to what he was doing, he was guilty of such negligence as precludes his recovery, and your verdict should be for the defendant." The instruction given was as follows: "It is the duty of every man, of every servant, to use his thinking faculties and his perceptive faculties: to think and look about him, and use his judgment and skill in avoiding the dangers to which he may be exposed. If he fails to look and think,—does not apply his judgment in endeavoring to escape injuries to which he knows himself to be surrounded, —then he takes the risk to which he is exposed, and must suffer the consequences, and cannot call upon his master to remunerate him for any injury he may have sustained."

This must suffice, and it must be apparent that the trial court, in its general charge, has presented the law, to say the least, in as pointed a manner as the instructions requested. The rule is well established that it is not error for the court to refuse to give instructions asked upon propositions which have been elsewhere covered in its general charge, or other special instructions given. Thomp. Trials, § 2352. Upon this matter the supreme court of the United States says: "It has been repeatedly determined by this tribunal that no court is bound to give instructions in the forms and language in which they are asked. If those given sufficiently cover the case, and are correct, the judgment will not be disturbed, whatever those may have been which were refused." *Railway Co.* v. *McCarthy*, 96 U. S. 258, 265. And Mr. Thompson further adds that "it is a principle upon which appellate courts uniformly act that the judgment will not be reversed for

the refusal of instructions, if the court can see that the case was placed fully, fairly, and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law, and in their application to the evidence." Thomp. Trials, § 2352, and notes.

To our minds it is apparent that the instructions asked were covered by those given by the court in its general charge; and when this is examined as a whole in the light of evidence as disclosed by the record, it becomes still more apparent that the case was presented to the jury fully, fairly and properly by the court; if any injury has been done the defendant in the result of the trial, it was not caused by any error in the trial court and within our province to correct.

The judgment must be affirmed.