Argued at Pendleton November 1; affirmed December 19, 1939

# HAMILTON *v.* REDEMAN
## (97 P. (2d) 194)

In Banc.

*Ralph S. Hamilton,* of Bend (De Armond, Hamilton & Goodrich, of Bend, on the brief), for appellant.

*George H. Brewster* and *Robert H. Foley,* both of Bend (E. O. Stadter, of Portland, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the defendant from a judgment of the circuit court, entered against him in a personal injury action after a jury had returned a verdict in favor of the plaintiff. At the time of his injury the plaintiff was a general farm hand upon the defendant's ranch. He was injured by a cave-in which occurred in a gravel pit to which he had been sent by the defendant to obtain gravel for use upon the latter's ranch. The complaint averred that the gravel pit was an unsafe place for the performance of plaintiff's labor.

The defendant presents 34 assignments of error. The contention which underlies virtually all of them is that this case is governed by the common-law principles of negligence, contributory negligence and assumption of risk, and not by the Employers' Liability Act, §§ 49-1701 to 49-1707, Oregon Code 1930.

The circuit court, after receiving testimony that at the time of his injury the plaintiff and five other

employees were engaged in construction work upon the defendant's ranch, withdrew from the jury's consideration the testimony concerning the five other employees. At the time of that ruling the plaintiff stipulated with the defendant that he (plaintiff) was employed for "general farm work" upon the ranch; but we do not understand that he conceded that the work he was doing in the pit was "farm work." The instructions to the jury stated not only the doctrines of negligence, contributory negligence and assumption of risk, but also the provisions of the final or "and generally" clause of § 49-1701, supra. They declared that the latter governed if the jury found that the plaintiff "was employed in a hazardous occupation," but that if his work involved no danger within the purview of the Employers' Liability Act, the rights of the parties were to be determined by the common-law principles just mentioned. The defendant contends that the reception of the testimony concerning the employment of the men in construction work, although subsequently withdrawn from the jury's consideration, and the statement to the jury concerning the Employers' Liability Act constituted errors. Two forms of verdict were submitted to the jury. One was: "We, the jury, regularly and lawfully impaneled to try the above-entitled cause, find that the plaintiff was at the time of the accident complained of engaged in a hazardous occupation, and find for plaintiff in the sum of * * *." That form was returned unsigned by the jury. The following, over the signature of the foreman, was returned as its verdict: "We, the jury, regularly and lawfully impaneled to try the above-entitled cause, find for plaintiff in the sum of $150.00 special damages, and $1,100.00 general damages."

The defendant owned and operated a ranch seven miles north of Bend. In charge of it was a foreman named Dewey Stouffer, and under him worked a crew of six men. One of these was the plaintiff. A year or so prior to the plaintiff's injury, which occurred October 22, 1937, the defendant undertook to improve his ranch by the construction of some buildings. A witness mentioned them as "a complete set of ranch buildings," and said that they included a feed shed, hoghouse, hay barn, silo and feeding troughs. The construction was done by the men who, like the plaintiff, had been hired as general farm hands, with the exception of one of the employees named Henry Wagner. Whenever the men could be spared from the farm work they were assigned to the construction work. Concrete was one of the materials that was used; the gravel for it was obtained by the employees from a pit some distance from the ranch which apparently belonged to no one. The pit was crescent shaped, about 350 feet across; its lines, however, were irregular. Its depth was 10 or 12 feet.

The gravel in the pit's embankments was not loose but compact, and required the application of a pick before it could be loosened for shoveling. Over the gravel bed was a stratum of hardpan and over the latter was the surface soil. The defendant described the embankments as "some overhanging and some the reverse." Stouffer, referring to the walls, testified: "Some of them sloped back and some of them sloped under." One of the witnesses swore that the overhang extended out two feet or more and that the overhanging walls were dangerous. No one contradicted that testimony or expressed a belief that the walls were safe. Lloyd Binning, who was in the defendant's employ at

the time of the plaintiff's injury, testified that he told Stouffer "at least three or four different occasions that the pit was really not safe to work in; that at times chunks had fallen from the edge of the pit into the pit where we had been working; that we had to watch it very closely, and that it wasn't really safe to work under." He swore further: "Stouffer would always say that he knew it was in bad condition, that something should be done, but right at that time we would not have time." Stouffer contradicted neither statement. Binning also testified that about a year before the plaintiff's accident the defendant, in an effort to rid the pit of the overhanging walls, "tried to blast them down with dynamite" but was unsuccessful. The defendant thought that he did the blasting in 1935, and, although admitting that his efforts were unsuccessful, said that had they succeeded not only would the gravel have been more accessible but the walls would have been safer. He had been familiar with the pit for 20 years, and did not contradict the aforementioned testimony which described the overhanging walls as dangerous. According to one of the witnesses, the pit gradually became more dangerous as more and more gravel was taken out near the foot of the embankment, thus causing the overhanging ledge to be further undermined. The defendant provided no timbers which could be used as braces and no such material was in the pit. Stouffer testified that when he took gravel from the pit he used a plow and obtained the gravel from the floor of the pit. No plow was provided for the plaintiff. Clean gravel, essential to good concrete, was always obtainable by digging into the foot of the walls wherever an overhang existed, but by so doing the overhang was undermined. The gravel in the walls that receded was

likely to be mixed with top soil which had slid down from its original position.

In October, 1937, the employees were engaged in the construction of some concrete pavement around the hoghouse and feed pen. Binning was the employee who ordinarily operated the defendant's truck and brought gravel from the pit to the ranch when it was needed. About three or four days before the plaintiff's injury Binning hurt his hand and thereupon the twenty-year-old plaintiff was assigned to the truck. The latter was used for hauling feed, milk, livestock, etc. Gravel was hauled in it when it was needed. The plaintiff entered the defendant's employ May 21, 1935, and until April 5, 1937 (six months before the accident), his duties were confined to the milking of cows. He had been to the pit "not over fifteen times" he said. He had had no experience in such a place and had never driven a gravel truck. He swore that the defendant had not told him of the dangers present in this gravel pit. However, when asked, "You really did not need any warning from either Redeman or Stouffer to tell you it was rather a dangerous place?" he replied, "No, I knew it was dangerous." When the plaintiff was at the pit about a week before his accident he saw a small section of overhanging embankment break loose and fall. No one was hurt upon that occasion. The fall was preceded by the tumbling down of gravel which warned those nearby to step aside.

In the late afternoon of October 21 the defendant directed the plaintiff to take the truck the next morning and go to the pit, load it with clean gravel and bring the load to the ranch. It was arranged that Kenneth Linderman, another ranch hand, would meet him at the pit. October 22, at 7:00 a. m., the plaintiff backed the truck

to a place near the embankment where clean gravel of the kind sought by the defendant was available, and started to use his pick. A moment or two later an avalanche, estimated by Linderman as being "three truckloads or two truckloads," descended and partially buried the plaintiff. In this manner he received the injuries for which he seeks redress in this action. On this occasion no warning of the avalanche was given by the fall of fragments. Linderman, as a witness for the defendant, swore, "It all came at once." He said that on a previous occasion "I was nearly caught myself" by a cave-in, but was warned to retreat when he saw rocks falling about him. He swore that at the place where the plaintiff was injured the embankment was 12 feet high and that the overhang was about two feet.

In stating to the jury the requirements exacted by the Employers' Liability Act, the instructions, in part, stated:

"If the plaintiff was employed in a hazardous occupation, and that is one for your determination, as heretofore stated by the court under the instructions you have been given, then both plaintiff and defendant are amenable to the Oregon Employers' Liability Act, and in that connection, I charge you/that if defendant was amenable to the Oregon Employers' Liability Act it was his duty to furnish the plaintiff a reasonably safe place to work, having in consideration the circumstances surrounding the work, and if you find that plaintiff was engaged in a hazardous occupation, and if you further find that plaintiff was injured by reason of the place in which he was working and that the defendant did not furnish plaintiff a reasonably safe place to work, defendant was guilty of negligence as a matter of law under the Employers' Liability Act."

That version of the requirements of the act was repeated to the jury three or four times. The instruc-

tion also stated that if the jury found the plaintiff was engaged in a hazardous occupation within the purview of the Employers' Liability Act, he could not be deemed to have assumed any risks arising from the defendant's failure to comply with the demands of the act; and that the latter did not recognize contributory negligence as a defense, but employed it as a means of making the employee pay for his own carelessness.

■ The first contention presented by the defendant which we shall consider is that the rights of the parties were governed by the common-law principles mentioned in preceding paragraphs, and that hence error was committed when the trial judge, in addition to expounding those principles, also explained the provisions of the Employers' Liability Act. This contention must be rejected, we believe, for several reasons. We shall state only one. The jury's verdict clearly indicates that the jurors determined that the defendant was liable under the very principles which he himself champions. They rejected claims of liability under the Employers' Liability Act. We cannot conceive of any prejudice which the defendant could have suffered from the statement to the jury of the trial judge's interpretation of the Employers' Liability Act, especially when it appears that the jury declined to apply that law to this case. In our opinion, the verdict has rendered the defendant's contention moot or purely abstract.

■ The defendant contends, as we have already indicated, that error was committed when the trial judge permitted Binning, the plaintiff, and the latter's father to give the aforementioned testimony concerning the construction work under way at the time of the plaintiff's injury. The complaint described a situation to which the Employers' Liability Act might have been

applicable, and apparently the purpose of the testimony just mentioned was to show that the employees, including the plaintiff, were engaged in a type of work within the contemplation of that Act at the time of the plaintiff's injury. We have given the essence of the challenged testimony in the above precis. While a motion for an involuntary nonsuit was under consideration plaintiff's counsel, addressing the trial judge, said: "I am willing for the Court to take from the consideration of the jury the testimony about Mr. Wagner, Mr. Main, Mr. Wright and Mr. Hanson." Colloquy followed in the course of which plaintiff's counsel said: "Plaintiff will stipulate that no man worked out there but what was employed as farm help." It is clear that the plaintiff was not abandoning his contention that, although he was hired as "farm help," his work in the gravel pit subjected him to risk and danger within the purview of the Employers' Liability Act. Shortly the motion for the nonsuit was denied. Thereupon the presiding judge said to the jury: "You have heard the testimony relative to what these men that were just named were doing down on the premises in relation to the construction of certain buildings * * *. The Court at this time has determined that it is immaterial as to that testimony in this case and that it perhaps should not have been admitted for your consideration. But it has been admitted; and now at this time as to that testimony and all of it the Court takes it away from the jury and you will disregard it and forget it and erase it from your minds." If error had been committed in the reception of this testimony—and concerning that we express no opinion—the withdrawal of the testimony, accompanied by the direction to "forget it and erase it from your minds," prevented prejudice to the defendant:

*Houk v. Gilmore,* 122 Or. 498, 259 P. 891. This contention is without merit.

The defendant next contends that the plaintiff by continuing in the defendant's employ assumed the risk of injury which was present in the overhanging walls of the gravel pit. The trial judge in the language of instructions requested by the defendant fully explained to the jury the doctrine of assumed risk. Reverting to the facts, it will be remembered that the plaintiff entered the defendant's employ when he was 17 or 18 years of age. For the first two years his work was confined to the milking of cows. In the seven months immediately preceding his injury he was a general farm hand. Three or four days before his injury he was placed in charge of the defendant's truck. This new assignment for the first time required him to work occasionally in the gravel pit. He was then 20 years of age. He had been to the pit not more than 15 times, but what, if anything, he did there on those occasions is not disclosed by the record. He knew that danger was present in the pit.

The risk which the defendant says the plaintiff assumed was an extraordinary risk; that is, one which was due to the defendant's failure to have exercised the appropriate degree of care for the safety of his employees. In other words, the defendant had failed to provide a reasonably safe place for the discharge of the plaintiff's duties. We make these statements, not only because there is evidence—uncontradicted evidence—in the record which supports them, but also because the jury's verdict is in favor of the plaintiff. There are two risks which may confront an employee: (a) a risk which remains after the employer has done everything required of him to provide the required

degree of safety for his employees; and (b) a risk which is the result of the employer's negligent failure to make proper provision for the employees' safety. *Prima facie* the employee assumes the risks of the kind first mentioned. Those of the second type (extraordinary risks) he assumes only in the event that the evidence so indicates. Concerning them the employer has the burden of proof. Another expression of this principle is that an employee without his consent does not bear the additional perils arising from his employer's failure to exercise reasonable care. So far we have been speaking of the doctrine's application to an adult. Labatt, Master and Servant (2d Ed.) § 1203, states:

"In the case of a minor, on the other hand, the defense of an assumption of ordinary risks is viewed as one which is merely conditional upon the production of specific and positive evidence going to show that the risk in question was, as a matter of fact, comprehended. In short, where a minor is concerned, ordinary risks are, for evidential purposes, always treated at the outset of the inquiry as extraordinary and the burden of establishing the servant's comprehension of a particular risk is cast upon the employer."

In the next section Labatt, in stating the principle applicable to extraordinary risks, declares:

"It is equally well settled that the inference of a minor's assumption of such risks may be drawn by the court where the evidence is reasonably susceptible of no other construction than that the servant, notwithstanding his youth, has full intelligence and information and as fully appreciated the danger to which he was exposed as a man of mature judgment under like circumstances."

In *Roth v. Northern Pacific Lumbering Co.*, 18 Or. 205, 22 P. 842, Mr. Justice LORD, in announcing this court's decision, said:

"In such case, if the servant is acquainted with the dangers and fully understands the risks to which he is exposed when the place prepared for him to work is near or about machinery which is not boxed or covered, and consents or chooses to contract to do it, then he assumes such risks, * * *. But, on the other hand, if the servant is ignorant or inexperienced, and does not know or understand the risks incident to his employment, and to which he would be exposed, and an injury happens to him without any negligence on his part, and without the master warning or pointing out the dangers, he would be guilty of a breach of duty, and liable to the servant for the injury he sustained. The distinction rests upon the knowledge of the servant in one case and the want of it in the other.

"If, therefore, the service required to be performed is dangerous or rendered so by reason of the master's failure to provide a place where the servant may do his work with safety, but which, by the exercise of due care and reasonable expense on the part of the master, might have been made safe, his omission would be a breach of duty, and render him liable for any injury arising therefrom, unless the servant has knowledge of, and comprehends the nature or extent of, the risks to which he is exposed, at the place provided, and thereby dispenses with the performance of this duty on the part of the master; or unless the master, when the servant is ignorant or inexperienced, points out, or gives him full notice of, the risks attending such service at the place to be performed, and thereby enables him to appreciate such risks, and to avoid them * * *.

"And while the testimony of the defendant tends to show that there was another safe way, and that there was no need to cross the shaft * * * the shaft was in plain sight, and the dangers in crossing it apparent to the commonest intelligence * * *. But it is to be borne in mind that there is a difference between a knowledge of the facts and a knowledge of the risks which they involve. One may know the facts, and yet not understand the risks; or, as Mr. Justice Byles observed, 'a servant knowing the facts may be utterly

ignorant of the risks.' Clark v. Holmes, 7 Hurl. & N. 937. For, after all, Mr. Justice Hallet said, 'It is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him. What avails it to him that all the facts are known, if he cannot make the deduction that peril arises from the relation of the facts? The peril may be a fact in itself of which he should be informed.' McGowan v. Mining Co., 3 McCrary 393, 9 Fed. Rep. 861. So that in a case like the present, where the evidence is conflicting as to whether or not the defendant had knowledge of the risks to which he was exposed, the question is preeminently for the jury."

The judgment for the plaintiff was affirmed.

In *Christie v. Great Northern Railway Co.*, 142 Or. 321, 20 P. (2d) 377, and in *Galvin v. Brown & McCabe*, 53 Or. 598, 101 P. 671, the principles just mentioned were applied with the result that although the workman may have been aware of his employer's negligent omission of duty, he was not chargeable with the assumption of the resulting risk of injury.

In *Millen v. Pacific Bridge Co.*, 51 Or. 538, 95 P. 196, the defendant, which was engaged in construction of a sewer, had completed two sections which approached each other within 17 feet. The trenches were 28 feet deep. In order to unite the two sections it was proposed to dig a tunnel through the intervening 17-foot area. The plaintiff's testate, J. H. Larsen, a common laborer, was assigned to the task of digging the tunnel. The sides of the trenches where Larsen worked were not properly shored, and while he was working a cave-in occurred which took his life. The principal defense was a contention that Larsen had assumed not only the ordinary risks but also the extraordinary ones result-

ing from the defendant's negligent failure to brace the sides. We quote from the decision:

"It is contended by defendant, however, that the danger was so apparent, open, and manifest that a person of ordinary intelligence could observe and appreciate it, and that Larsen, when he first entered the trench, then about 25 or 26 feet deep, must have seen that the end thereof was not shored, and that to dig into the base of a perpendicular bank of that height and undermine it would cause the unsupported part above to fall upon and injure him."

The decision then pointed out that Larsen was inexperienced and, according to the testimony, "handled a shovel like a greenhorn." It declared that, although he must have seen that the trench's wall was 25 feet high, and that no protection had been made to prevent its falling,

"there is a difference between knowledge of the surrounding circumstances and appreciation of a risk: * * * Can it be said, as a matter of law, that the circumstances related in this record show conclusively that the extraordinary risk and danger of this bank caving was so obvious to an ordinarily intelligent person that it would be perceived and appreciated at once? Mr. Justice Moore, in Johnston v. O. S. L. & U. N. Ry. Co., 23 Or. 95-105 (31 Pac. 283, 286), has defined such a risk as follows: 'An open, visible risk is such a one as would in an instant appeal to the senses of an intelligent person: Wood, Mas. & Ser. 763. It is so patent that it would be instantly recognized by a person familiar with the business. It is a risk about which there can be no difference of opinion in the minds of intelligent persons accustomed to the service.' * * * The question whether it would be safe to dig a tunnel into the particular bank in question depends upon something else besides the height of the bank, and it not being timbered or shored, but rather upon the cohesiveness of the soil and other collateral facts. It was not a danger

so patent that it would be involuntarily recognized by one inexperienced and unfamiliar with the business.''

This decision quoted the following from *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447-459 (44 N. E. 876):

''Even if the servant has some knowledge of the attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury.''

The judgment for the plaintiff was affirmed.

■■■ The above, we believe, constitutes a sufficient review of the authorities. We studied all of those submitted by the defendant, but do not deem it necessary to mention all of them herein. We revert to the fact that the plaintiff in this case, like the one in *Strauhal v. Asiatic S. S. Co.*, 48 Or. 100, 85 P. 230, was inexperienced in the work which brought him to his injury. The plaintiff was 20 years of age, and, as we have seen, the law is not as willing to charge a minor with the assumption of risks attendant upon employment as a man of mature years. This is not due to sentiment, but is a means to

which the law resorts for the purpose of compelling an employer, who contends that a youth assumed an extraordinary risk, to prove that the youth was sufficiently familiar with the risk and possessed maturity of judgment. The work around the pit was a new, added or different duty from the ones (milking of cows and general farm work) which had provided the plaintiff with his original observations concerning risks and dangers: *Vanyi v. Portland Flouring Mills Co.*, 63 Or. 520, 128 P. 830. The plaintiff had been to the gravel pit not more than 15 times and certainly had taken gravel from it upon no more than a few occasions. He said that he knew the pit was dangerous, but that circumstance does not necessarily indicate that he knew the origin, scope and extent of the dangers. Virtually everyone, if asked, would say that a gravel pit, a mine, or a sawmill is a place of danger, and yet few who have never worked in such a place would know enough about the danger to be in a position to determine intelligently whether they cared to assume the risks arising from the danger if about to accept employment in the place. The plaintiff ought to have known that a heavy object, if its support were removed, would fall to the ground, and likewise that if he sufficiently undermined a ledge it, or a part of it, would drop. See *Swanson v. The City of Lafayette*, 134 Ind. 625, 33 N. E. 1033, and *Griffin v. The Ohio and Mississippi Ry. Co.*, 124 Ind. 326, 24 N. E. 888. But even an expert might not know the tensile strength of a ledge of hardpan. Again, it was not expected that the plaintiff would work in the pit as his regular occupation. He was placed in charge of the truck only temporarily, and even in his temporary employment only an occasional trip to the pit was required of him. The

plaintiff's regular occupation was that of a farm hand. A man who expects to work in a gravel pit, machine shop, or other place of danger indefinitely would look around, apprise himself of the dangers, and then adopt the course necessary to safeguard himself. But one who is sent to such a place only occasionally, and only in the course of temporary employment, and who has reason to believe that this, or possibly the next, trip may be the last, can scarcely be expected to overhaul the place so as to make it safe lest it be said that he assumed the risks inherent in all of its dangers. The walls of the pit were of cohesive material which had enabled others to do considerable undermining. Those familiar with the pit had been able to obtain gravel from it in safety, which was an assurance to the plaintiff that he, too, could work there in safety. The defendant had taken gravel from it for 20 years, apparently without being injured. The plaintiff made the trip which resulted in his injury after having been directed to do so by the defendant, and it is altogether likely that he may have assumed that his employer, with his superior knowledge of the facts, knew that the work could be done in safety. If he so assumed, the fact that his employer gave to this 20-year-old youth no warning to beware of overhanging ledges would have afforded considerable justification for the assumption. It ought not be said that the plaintiff assumed the risk attendant upon these new duties unless it appears that he possessed sufficiently exact information of the nature and extent of the new dangers to enable him to determine whether he desired to assume them. To require less would be out of harmony with the rationale upon which the doctrine of assumed risks is based. In *Westman v.*

*Wind River Lumber Co.*, 50 Or. 137, 91 P. 478, Mr. Chief Justice BEAN said:

"Plaintiff was not only a minor, but an inexperienced workman, and therefore it was a question for the jury whether the dangers were open and obvious to a person of his age and experience."

Without further analysis, we express our belief that the issue presented by this contention of the defendant was a question for the jury. It was properly submitted. That being true, we have no right to disturb the jury's findings.

We have considered all of the other contentions presented by the defendant. We believe that the foregoing suffices to dispose of all of them. All received careful attention.

The judgment of the circuit court is affirmed.

RAND, C. J., and BEAN, BELT and LUSK, JJ., concur.

BAILEY and KELLY, JJ., did not participate in this decision.