Submitted May 6, reversed July 17, 1963

# SHORT *v.* FEDERATED LIVESTOCK CORP.
### 383 P. 2d 1016

Hess and Hess, Portland, filed a brief for appellant.

Phillips, Coughlin, Buell & Phillips, Portland, filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Deneoke, Justices.

## ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of involuntary nonsuit which the circuit court entered in favor of the defendant after the plaintiff had rested his case in chief and the defendant had made the requisite motion. The action which terminated in that manner was based upon averments that the plaintiff was employed by the defendant as a feeder upon the defendant's hog raising farm near Pendleton and, through the defendant's negligent failure to render its hog pens reasonably safe for the work of its employees when they entered to feed the hogs, sustained injury.

The plaintiff presented evidence showing: (1) in feeding the defendant's brood sows it was necessary for the plaintiff, while carrying a sack of feed weighing 100 pounds, to enter a pen 100 by 100 feet in size in which about 35 sows were enclosed and place the feed in a trough; (2) the sows were ravenously hungry and their weight varied from 400 to 600 pounds each; (3) although the feed trough should have been fastened to the fence so the feed could be deposited in it without the feeder being required to enter the pen, it was not fastened to anything and the sows rooted it about the pen to various places; (4) the sows would observe the plaintiff as he approached the pen carrying the

sack of feed and upon his entry into the pen would crowd around him; (5) when the plaintiff, carrying the sack containing the feed, had climbed over the fence and had started for the feed trough, one of the hogs collided with him thereby knocking him to the ground and causing his injury; and (6) in order to bring the hog food to the sow pens from the silo, the plaintiff used a motor truck, but after removing the sack of feed from the truck and starting for the pen, his work was not affected by mechanical devices or power driven equipment.

The defendant's operation was concerned with three types of hogs: boars, brood sows and feeder pigs. At the time of the plaintiff's injury the three types were kept in separate enclosures. The plaintiff fed all three. The boars were kept in small pens, each of which held one to three boars. The plaintiff, in feeding them, entered the pen. The feeder pigs were being fattened for the market and there was available to them a constant supply of feed which the plaintiff put in motion. The feed made its way to them by a mechanical device and the plaintiff was not required to enter their pens. The plaintiff testified that a similar method could not be used in the sow pens. The sows were fed only once per day and since the defendant did not wish them to gain weight, their feed was limited in quantity. The number of sows in a pen varied. When fewer than 35 were in a pen, less than 100 pounds of feed was given to them.

Evidence indicates that it would be practical to fasten the feed trough of the sow pen to the fence and thus render it unnecessary for the feeder to enter the pen. Evidence also shows that fastening the trough to the fence would not hamper the efficiency of the defendant's operations and that the expense would be

small. The evidence signifies that if two employees are assigned to the feeding work the danger to the feeder is lessened. His helper attracts the attention of the hogs while he brings the feed to the trough.

The plaintiff, in his efforts to establish the defendant's duties, depended upon (1) the demands of due care exacted by the common law, (2) the "and generally" clause of the Employers' Liability Law (ORS 654.305) and (3) the state's Safety Act (ORS 654.005 through 654.180) together with the rules promulgated under the authority of ORS 654.025 (2).

In its defense the defendant charged the plaintiff with contributory negligence and the assumption of the risks of his employment.

The plaintiff does not claim that any part of the Employers' Liability Law (ORS 654.305 to 654.335) is applicable to this case except ORS 654.305, commonly called the "and generally" clause. It reads:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

We have read the transcript of evidence carefully. Apart from its averments of negligence, we do not believe that it describes a commercial hog raising operation that was conducted in a manner substantially different from others in Oregon. In other words, the question is whether the raising of hogs involves "risk

or danger" as those quoted words are employed in ORS 654.305.

The complaint charges the defendant with negligence in these particulars: (1) the defendant should have provided a means of feeding the hogs which would not have required the feeder to enter the pens; (2) the defendant should have furnished "adequate work space for complete freedom of movement for the feeder"; (3) the defendant should have provided "barriers" which would have enabled the feeder to reach the trough without interference from the hogs; (4) the defendant did not afford the feeder "a reasonably safe place in which" he could work; (5) the defendant failed to use every device, care, and precaution for the safety of the plaintiff inasmuch as it (a) required him to enter the pen, (b) did not supply barriers, (c) did not provide the plaintiff "with sufficient assistance to keep said hogs away" and (d) did not furnish the plaintiff with "a reasonably safe place to work." Those are the charges of negligence which the complaint submits.

As we have seen, the plaintiff contends that feeding the sows involved "risk or danger" for the feeder to the extent contemplated by those words as they appear in ORS 654.305—the "and generally" clause. The latter does not exact of all operations the high degree of care which it invokes. That degree of care is required only of those operations which involve "risk or danger."

We quote the following from *Wells v. Nibler,* 189 Or 593, 221 P2d 583:

"The above act has been considered many times by this court, and many opinions have been written concerning its provisions, and it would serve no good purpose to review all of them. One needs only

to refer to Barker v. Portland Traction Co., 180 Or 586, 173 P2d 288, 178 P2d 706, and to Williams v. Clemen's Forest Products, 188 Or 572, 216 P2d 241, to find the law that is determinative of the question involved in the case at bar. In the former case the plaintiff was an operator of a one-man streetcar on the company's line. Because of the weather conditions, Barker left his car and tried to remove the snow and ice from a switch, whereupon he was injured. He brought his action under the Employers' Liability Act. The court there held that the act did not apply in the following language:

" 'We do not believe that the plaintiff's contention is warranted by any language of the Employers' Liability Act. Certainly no express provision of the act extends its protective features to employees engaged in the performance of non-hazardous work. According to our interpretation of the act, its protection is available only to (1) employments which are attended with inherent risks and dangers, and (2) employments which are rendered hazardous through the use of machinery, scaffolding, dangerous substances, electrical devices or other equipment and substances which are expressly enumerated in the act.' "

Other decisions of this court define in language similar to that just quoted the enhanced degree of risk or danger which must be present in an operation to bring it within the "and generally" clause of ORS 654.305. We remain satisfied with their holdings and deem it unnecessary to list them once more. They hold that in order to bring an operation within the "and generally" clause, the evidence must show that it was "attended with inherent risks and dangers." By using the words "enhanced degree of risk or danger," we make no effort to add something to the statute's requirement. We used the words as the equivalent of "inherent risks and dangers."

This court has determined in several cases the application of the Employers' Liability Law to farming operations in which a farm employee sustained an injury. In the cases in which liability was recognized the employee was using power driven machinery or fell through an unenclosed floor opening. In each instance the injury-inflicting instrumentality was at least partially concealed from the injured farm laborer at the moment of mishap. In the case of the floor opening, the farm laborer had never previously been in the structure, the place was dark, and he was wholly ignorant of the opening. In the case of one of the mechanical devices a short bolt that protruded from the shaft was concealed from its victim by its rapidly rotating movement.

■ When the plaintiff entered the hog pen his safety was not endangered by scaffolding, electrical wires, dangerous machinery, floor openings, false work, or any of the other instrumentalities that are specifically mentioned in the Employers' Liability Law. Nor was his safety endangered by equipment similar to that just mentioned. To deem his work as within the purview of the "and generally" clause would compel us to hold that since the hogs' craving for the food which he carried caused them to crowd around him, the operation thereupon became inherently dangerous. The plaintiff saw the hogs as he approached the pen. He had spent virtually his entire life—he was 46 years old when injured—upon farms and had had much experience with feeding hogs. The danger that confronts a hog feeder is patent and lies directly before him. It is materially different from that which is presented by electrical wires, power driven machinery, unenclosed floor openings and unstable scaffolding. We do not believe that a holding is warranted that

the hog pen in which the plaintiff sustained his injury was inherently dangerous within the meaning of those words as they occur in our previous decisions.

The plaintiff presented evidence which indicates that under common law standards the defendant failed to provide for him a place, reasonably safe, in which he could discharge the duties of his employment. The evidence shows that the plaintiff and another of defendant's employees had requested the defendant's foreman to fasten the feed troughs to the fence and that the foreman did not question that fence troughs would enhance safety, but that he replied that the defendant had not set aside any money for that purpose. More than one witness testified that it is dangerous for one feeder alone to enter a pen containing 35 brood sows.

■ *Hoffman v. Broadway Hazelwood,* 139 Or 519, 10 P2d 349, 11 P2d 814, states in language which has been quoted, "under the common law, it would be the duty of the defendant company to furnish the plaintiff a reasonably safe place in which to work." We think that the evidence shows a violation of that duty sufficient to call for a defense.

■ If the common law required the defendant to fasten the feed troughs to the fences so as to obviate the necessity of the feeder to enter the pen, the plaintiff did not assume the risk of the defendant's neglect. Although a workman does not assume the risk of his employer's neglect to comply with the law's demands, the defense of contributory negligence remains as to his own failure, if any, to exercise due care." *Ritter v. Beals,* 225 Or 504, 358 P2d 1080, and *Hamilton v. Redeman,* 163 Or 324, 97 P2d 194.

It follows from the above that the challenged judgment is reversed.